SCHUSTER CONSTRUCTION SERVICES, INC v
PAINIA DEVELOPMENT CORPORATION

Docket No. 228809. Submitted April 2, 2002, at Detroit. Decided May 7,
2002, at 9:00 A.M.

Schuster Construction Services, Inc., brought an action in the Wayne
Circuit Court against Painia Development Corporation and Charles
Roper, doing business as Charles Roper Builders, seeking fore-
closure of a lien under the Construction Lien Act (CLA), MCL
570.1101 *et seq.* The plaintiff leased a forklift to Roper to use on a
project for which Painia, the owner and developer, hired Roper as
a contractor to perform carpentry work. The balance due on the
lease was not paid, although Painia, who had recorded a notice of
commencement pursuant to the CLA, paid Roper the full contract
amount through a series of partial payments. Roper submitted a
statutorily required sworn statement with regard to the final pay-
ment only, but did not list any supplier or other lien claimant. The
plaintiff filed a notice of furnishing under the CLA after Painia had
paid Roper in full and the plaintiff thereafter recorded a claim of
lien against Painia's project. The court, Amy P. Hathaway, J.,
granted summary disposition in favor of the plaintiff and entered a
judgment awarding the plaintiff the entire balance due on the lease,
plus costs, attorney fees, and statutory interest. The Court of
Appeals granted Painia's delayed application for leave to appeal.

The Court of Appeals *held*:

1. The CLA provides protection for an owner such as Painia by
allowing the owner to request and receive a sworn statement each
time a payment to a contractor is made, thereby notifying the
owner of any lien claimants. Likewise, a supplier such as the plain-
tiff can protect its right to a lien by timely filing a notice of furnish-
ing under MCL 570.1109(1). A supplier who fails to do so may have
its lien reduced under MCL 570.1109(6). Pursuant to MCL
570.1110(7), an owner may rely on a contractor's sworn statement
to avoid a claim of a supplier who has filed an untimely notice of
furnishing.

2. The plaintiff and Painia both failed to avail themselves of the
protections afforded by the CLA. Pursuant to subsection 109(6), the
plaintiff's claim to a lien is not wholly defeated but may be reduced

by any payments that Painia made to Roper pursuant to a sworn statement. Therefore, the plaintiff's right to a lien must be reduced by the amount of Painia's last payment, the only one made pursuant to a sworn statement. The order granting summary disposition in favor of the plaintiff must be affirmed, the judgment must be vacated, and the matter must be remanded for entry of a judgment for the reduced amount. The award of attorney fees must be affirmed.

Affirmed in part, vacated in part, and remanded.

*John M. Shureb*, for Schuster Construction Services, Inc.

*Mark F. Makower & Associates, P.C.* (by *Mark F. Makower* and *Christopher Hartman*), for Painia Development Corporation.

Before: ZAHRA, P.J., and NEFF and SAAD, JJ.

ZAHRA, P.J. Defendant Painia Development Corporation[1] appeals by delayed application for leave to appeal granted from an order denying defendant summary disposition and granting plaintiff summary disposition in this action for foreclosure of a lien under the Construction Lien Act (CLA), MCL 570.1101 *et seq.* We affirm in part, vacate in part, and remand for proceedings consistent with this opinion.

### I. FACTS AND PROCEDURE

Defendant is the owner and developer of the Ariel Square Condominium project in Detroit. Defendant recorded a notice of commencement with the Wayne County Register of Deeds, as required by the CLA.

---

[1] Defendant-appellant Painia Development Corporation will be referred to as "defendant" in the remainder of this opinion. Defendant Charles Roper, doing business as Charles Roper Builders, is not a party to this appeal and, therefore, will be referred to as "Roper."

MCL 570.1108. Defendant hired Roper to perform rough carpentry work on the project, for a contract amount in excess of $200,000.

Plaintiff leased a forklift to Roper for use on the Ariel Square project. The forklift was delivered to Roper at the work site on July 30, 1998, and remained there until retrieved by plaintiff on March 10, 1999. Plaintiff claims to have billed Roper $11,652.63 for use of the forklift and received payments of only $1,728.88, leaving a balance due of $9,923.75.

Defendant paid Roper the full contract amount through a series of partial payments. Defendant made its final payment to Roper of $4,500 on February 18, 1999. Roper submitted a sworn statement in connection with that final payment, which did not list any supplier or other lien claimant. See MCL 570.1105(2) and MCL 570.1110(1). Roper did not submit a sworn statement in connection with any of the other partial payments it received.

Plaintiff filed a notice of furnishing under the CLA on April 29, 1999. See MCL 570.1109. Plaintiff does not claim to have otherwise notified defendant of its interest before defendant paid Roper in full.[2] On May 25, 1999, plaintiff recorded a claim of lien against the project with the Wayne County Register of Deeds. See MCL 570.1107.

Plaintiff filed this action to foreclose the lien on November 23, 1999. Defendant moved for summary disposition on the basis that it paid Roper in full in

---

[2] Plaintiff claims to have contacted defendant in March 1999 to request a legal description of the property in anticipation of filing a notice of furnishing, but does not claim to have notified defendant that it supplied the equipment to Roper or had any interest in the project before defendant's payment in full to Roper.

reliance on Roper's sworn statement before plaintiff filed its notice of furnishing. The trial court granted summary disposition for plaintiff. Judgment was entered on June 15, 2000, entitling plaintiff to a construction lien in the amount of $9,923.75, plus costs and attorney fees in the amount of $4,944.50, and statutory interest. Defendant's claim of appeal to this Court was dismissed because of plaintiff's unresolved claim against Roper.[3] This Court eventually granted defendant's delayed application for leave to appeal.[4] Thereafter, defendant filed a motion with this Court for peremptory reversal. That motion was denied[5] and this appeal ensued.

## II. ANALYSIS

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Likewise, issues arising from the interpretation and application of statutes are reviewed de novo. *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998). In reviewing a motion under MCR 2.116(C)(10), this Court considers the affidavits,

---

[3] *Schuster Constr Services, Inc v Painia Development Corp*, unpublished order of the Court of Appeals, entered July 18, 2000 (Docket No. 228289).

[4] *Schuster Constr Services, Inc v Painia Development Corp*, unpublished order of the Court of Appeals, entered August 4, 2000 (Docket No. 228809).

[5] *Schuster Constr Services, Inc v Painia Development Corp*, unpublished order of the Court of Appeals, entered September 28, 2000 (Docket No. 228809).

pleadings, depositions, admissions, or any other documentary evidence submitted in a light most favorable to the nonmoving party to decide whether a genuine issue of material fact exists. *Ritchie-Gamester v City of Berkley*, 461 Mich 73, 76; 597 NW2d 517 (1999); *Rollert v Dep't of Civil Service*, 228 Mich App 534, 536; 579 NW2d 118 (1998). All reasonable inferences are resolved in the nonmoving party's favor. *Hampton v Waste Mgt of Michigan, Inc*, 236 Mich App 598, 602; 601 NW2d 172 (1999).

### B. PLAINTIFF'S CLAIM FOR A CONSTRUCTION LIEN UNDER THE CLA

Defendant first argues that the trial court erred in interpreting the CLA to allow plaintiff to take a lien. Defendant claims it had the right to rely on Roper's sworn statement, which did not name any other lien claimant, and that plaintiff's lien was barred because plaintiff failed to timely file a notice of furnishing within twenty days of supplying the forklift.

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the Legislature's intent. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). If the plain and ordinary meaning of a statute is clear, judicial construction is neither necessary nor permitted. *Elia v Hazen*, 242 Mich App 374, 381; 619 NW2d 1 (2000). We may not speculate regarding the probable intent of the Legislature beyond the words expressed in the statute. *In re Schnell*, 214 Mich App 304, 310; 543 NW2d 11 (1995). When reasonable minds may differ regarding the meaning of a statute, the courts must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construc-

tion that best accomplishes the purpose of the statute. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994).

In *Vugterveen Systems, Inc v Olde Millpond Corp*, 454 Mich 119, 121-124; 560 NW2d 43 (1997), our Supreme Court provided a useful overview of the parties' interests under the CLA:

> The [CLA] is based on an exchange of information between the owner of the property, the general contractor, subcontractors, material suppliers, and laborers. See [1 Cameron, Michigan Real Property Law (2d ed)] § 19.18, pp 802-803. The act creates this flow of information through a series of documents that provide the information necessary to allow the parties to protect their interests. McAlpine & Keating, Construction Liens in Michigan, § 4.1, p 4-3.
>
> Normally, this flow of information begins with the property owner. The act requires an owner to file a notice of commencement with the register of deeds before any improvement is made on the property. MCL 570.1108; MSA 26.316(108). See McAlpine & Keating, *supra*, § 4.5, pp 4-7 to 4-8. . . .
>
> After the notice of commencement is filed, any entity listed in the act who performs improvements on the property is required to provide notice that it has begun work through a notice of furnishing. MCL 570.1109; MSA 26.316(109). McAlpine & Keating, *supra*, §§ 4.13-4.16, pp 4-13 to 4-16. In most cases, a subcontractor is required to provide a notice of furnishing to the owner and the general contractor within twenty days after first furnishing labor or material. MCL 570.1109(1); MSA 26.316(109)(1). This notifies owners of the identity of subcontractors improving the property who may become future lien claimants. See McAlpine & Keating, *supra*, § 4.13, p 4-13.
>
> A subcontractor's failure to provide a notice of furnishing within the twenty-day time frame does not serve to defeat its right to a lien. MCL 570.1109(5); MSA 26.316(109)(5). However, failure to comply with the twenty-day time limit

> may reduce the value of the lien. [The Court then quotes
> MCL 570.1109(6).]
>
> . . . [A] subcontractor's delay in providing the notice of fur-
> nishing will reduce the lien by the amount that the owner
> had already paid for the subcontractor's work before the
> notice was provided. McAlpine & Keating, *supra,* § 4.15,
> p 4-15. However, these payments must have been made pur-
> suant to a contractor's sworn statement or waiver of lien.
> *Id.*
>
> The act also provides owners with information by requir-
> ing general contractors and subcontractors to make sworn
> statements itemizing their bills. MCL 570.1110; MSA
> 26.316(110). See McAlpine & Keating, *supra,* § 4.17, p 4-17.
> A general contractor must provide the owner with such a
> statement when payment is due or demanded, and when-
> ever such a statement is demanded by the owner. MCL
> 570.1110(1); MSA 26.316(110)(1). . . . Thus, the owner can
> rely on a sworn statement as a comprehensive list of poten-
> tial lien claimants.
>
> Sworn statements can also be used as a defense to a
> claim of lien. An owner or general contractor may rely on a
> sworn statement prepared by another party to avoid the
> claim of a subcontractor, unless the subcontractor has pro-
> vided a notice of furnishing. MCL 570.1110(7); MSA
> 26.316(110)(7).

Here, the parties' status under the CLA is undis-
puted. Defendant is an "owner," MCL 570.1105(3), of
the Ariel Square project given that it is undisputed
defendant's president and sole shareholder holds fee
interest in the property. Roper is a "contractor," MCL
570.1103(5), having provided rough carpentry services
pursuant to its contract with defendant. Plaintiff is a
"supplier," MCL 570.1106(5), having rented a forklift
to Roper for use at the Ariel Square project.

We turn next to the parties' compliance under the
act. Most significant to our analysis is plaintiff's fail-
ure to timely file its notice of furnishing as well as

Roper's failure to provide and defendant's failure to secure from Roper sworn statements in connection with each of the partial payments under the rough carpentry contract. As discussed, Roper provided defendant only one sworn statement, submitted in connection with defendant's final $4,500 payment under the contract. MCL 570.1110 requires a contractor to submit a sworn statement when payment to the contractor is due or when an owner requests a sworn statement. Thus, the act provides protection for an owner by allowing the owner to request and receive each time payment is made a sworn statement from which the owner can be notified of any lien claimants. See MCL 570.1110(7) (providing that an owner may rely on a sworn statement to avoid a claim of a supplier that has filed an untimely notice of furnishing), and *MPC Cashway Lumber Co v Hull*, 238 Mich App 441, 449-450; 606 NW2d 392 (1999). Likewise, a supplier can protect its right to a lien by timely filing a notice of furnishing in compliance with MCL 570.1109(1). See *id.* (generally requiring a supplier to file a notice of furnishing within twenty days after supplying material). In a case where the supplier fails to do so, the supplier risks that its lien may be reduced under subsection 109(6).

Here, both parties have failed to avail themselves fully of the protections afforded by the CLA; defendant through its failure to secure sworn statements with each partial payment made to Roper, and plaintiff through its failure to timely file a notice of furnishing. Thus, in determining whether plaintiff is entitled to any amount of lien, it is necessary to examine subsection 109(6), which addresses precisely this situation.

MCL 570.1109(6) provides:

> The failure of a lien claimant, to provide a notice of furnishing within the time specified in this section shall not defeat the lien claimant's right to a construction lien for work performed or materials furnished by the lien claimant before the service of the notice of furnishing except to the extent that payments were made by or on behalf of the owner or lessee to the contractor pursuant to either a contractor's sworn statement or a waiver of lien in accordance with this act for work performed or material delivered by the lien claimant. This subsection does not apply to a laborer.

Under the plain language of that subsection, plaintiff's claim to a lien is not wholly defeated merely by its failure to timely file the notice of furnishing; however, the amount to which plaintiff is entitled may be reduced. The dispositive issue in applying subsection 109(6) to these circumstances is the extent to which payments were made by defendant pursuant to a sworn statement from Roper or a waiver of lien from plaintiff.

Roper submitted only the single sworn statement in connection with defendant's final $4,500 payment. Thus, only that $4,500 payment can be said to have been made pursuant to a sworn statement for the purposes of subsection 109(6). We reject defendant's argument that the single sworn statement was cumulative of all prior payments defendant made under the contract with Roper. MCL 570.1110(1) plainly requires that a sworn statement be submitted whenever payment to an owner is due. Given that requirement, we cannot construe any single sworn statement as encompassing anything more than the payment in connection with which it was submitted. We agree with defendant that it was not required to ensure the accuracy of the sworn statement that was submitted

by Roper. MCL 570.1110(7); *MPC Cashway Lumber Co, supra.* Therefore, under subsection 109(6), plaintiff's right to a lien for supplying the forklift before its filing of the notice of furnishing must be reduced by $4,500.[6] However, no further reduction of plaintiff's lien amount is warranted under the facts of this case.

The portion of subsection 109(6) that states, "a waiver of lien in accordance with this act for work performed or material delivered by the lien claimant" necessarily refers to any waiver of lien submitted by plaintiff in this case. Subsection 109(6) begins by stating that a lien claimant's untimely filing of a notice of furnishing "shall not defeat the lien claimant's right to a construction lien . . . ." In applying that provision to this case, "the lien claimant" is necessarily plaintiff. As such, logic dictates that all later references within the subsection to "the lien claimant" also refer to plaintiff to the exclusion of any other party. Because it is undisputed that defendant never made a payment to plaintiff and plaintiff never submitted any waiver of lien in connection with a payment made by defendant, plaintiff's right to a lien in this case is not

---

[6] Plaintiff would have us subtract the partial payment made pursuant to the single sworn statement from the total contract price and affirm the judgment for plaintiff in total because the remaining balance is more than sufficient to cover plaintiff's lien claim. However, plaintiff's position is contrary to the plain reading of the statute. The plain language of subsection 109(6) requires reduction of a lien to the extent that payments were made by an owner "pursuant to *either* a contractor's sworn statement *or* a waiver of lien . . . for work performed or material delivered by the lien claimant." (Emphasis added.) In this case, the owner made a partial payment of $4,500 pursuant to a sworn statement and we must therefore reduce plaintiff's lien by that amount. We recognize that in a situation involving multiple lien claimants who fail to file notices of furnishing, the interpretation we give to subsection 109(6) may result in a windfall to an owner. However, the language of subsection 109(6) is clear and we cannot substitute our judgment for the judgment of the Legislature.

reduced under subsection 109(6) pursuant to a waiver of lien.[7]

Accordingly, we vacate the judgment entered below awarding plaintiff its full $9,923.75 balance and remand for entry of a new judgment. The trial court shall enter judgment for plaintiff in the amount of $5,423.75, the $9,923.75 balance, less the $4,500 amount paid by defendant pursuant to Roper's sworn statement. MCL 570.1109(6).

### C. ATTORNEY FEE CLAIM

Defendant further challenges the trial court's award of attorney fees to plaintiff. MCL 570.1118(2) provides:

> In each action in which enforcement of a construction lien through foreclosure is sought, the court shall examine each claim and defense that is presented, and determine the amount, if any, due to each lien claimant or to any mortgagee or holder of an encumbrance, and their respective priorities. The court may allow reasonable attorneys' fees to a lien claimant who is the prevailing party. The court also may allow reasonable attorneys' fees to a prevailing defen-

---

[7] We recognize that Roper submitted waivers of lien with each payment made by defendant. However, as explained, reading the phrase "a waiver of lien in accordance with this act for work performed or material delivered by the lien claimant" in context, unambiguously establishes that the waiver of lien must come from "the lien claimant," in this case plaintiff. Our interpretation of subsection 109(6) does not, as defendant surmises, have the effect of assigning owners the impossible task of securing waivers of lien from suppliers it has no notice of because of the suppliers' failure to file notices of furnishing. A lien will be reduced under subsection 109(6) to the extent that an owner makes payment to a contractor pursuant to a sworn statement or a waiver of lien from the lien claimant. Therefore, in a case such as the present where an owner has no prior knowledge of the lien claimant, the lien amount will be reduced by the amount of payments made in connection with sworn statements provided by the contractor.

dant if the court determines the lien claimant's action to enforce a construction lien under this section was vexatious. Attorneys' fees allowed under this section shall not be paid from the homeowner construction lien recovery fund created under part 2.

Defendant challenges the award of attorney fees on the basis that plaintiff did not comply with the CLA by filing a timely notice of furnishing and was not entitled to a lien under the CLA. Defendant does not specifically challenge the amount of the fees awarded. Given our determination that plaintiff is entitled to a lien, plaintiff is the prevailing party under subsection 118(2) and defendant has provided no basis for vacating the trial court's award of fees to plaintiff.[8]

### III. CONCLUSION

Under MCL 570.1109(6), plaintiff is entitled to a lien in the reduced amount of $5,423.75. Therefore, we affirm the trial court's order granting summary disposition for plaintiff, but vacate the judgment awarding plaintiff the full balance claimed for Roper's use of its equipment. We remand for entry of a judgment consistent with this opinion.[9] We do not retain jurisdiction.

Affirmed in part, vacated in part, and remanded.

---

[8] Because defendant is not the prevailing party pursuant to subsection 118(2), we reject defendant's claim for attorney fees that alleged that plaintiff's action was vexatious.

[9] Because we have reduced the amount of the judgment on which the trial court awarded costs and interest, the trial court may, on remand, review and adjust these awards in light of the reduced recovery mandated by this opinion.