**STEELCON, INC., Plaintiff.**

v.

**BENNETT & WRIGHT GROUP, INC., et al, Defendants.**

Nos. 01–70161, 01–70480.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 21, 2003.

Patrick A. Facca, Facca, Richter, Troy, MI, Kenneth H. Adamczyk, Thomas D. Noonan, Butzel Long, Detroit, MI, Richard T. Hewlett, Ann Arbor, MI, for plaintiff.

Walter J. Federlein, Frederick F. Butters, Peter J. Cavanaugh, Thomas M. Keranen Assoc., Bloomfield Hills, MI, Kevin S. Hendrick, Clark Hill, Detroit, MI, Jennifer W. Fletcher, Peter H. Strott, Griffin, Cochrane, Atlanta, GA, Hill Lewis, Detroit, MI, for defendants.

Kevin S. Hendrick, Clark Hill, Detroit, MI, Peter H. Strott, Griffin, Cochrane, Atlanta, GA, Jennifer W. Fletcher, Peter H. Strott, Griffin, Cochrane, Atlanta, GA, for cross-claimants.

Walter J. Federlein, Frederick F. Butters, Peter J. Cavanaugh, Thomas M. Keranen Assoc., Bloomfield Hills, MI, for cross-defendants.

**ORDER GRANTING METRO'S MOTION FOR SUMMARY JUDGMENT AGAINST BLUE CIRCLE, DENYING BLUE CIRCLE'S MOTION FOR SUMMARY JUDGMENT AGAINST METRO, GRANTING METRO'S MOTION FOR SUMMARY JUDGMENT AGAINST BENNETT & WRIGHT, AND DENYING BLUE CIRCLE'S MOTION FOR SUMMARY JUDGMENT AGAINST BENNETT & WRIGHT**

EDMUNDS, District Judge.

This matter came before the Court on Metro Industrial Contracting, Inc.'s and Blue Circle, Inc.'s motions for summary judgment against Bennett & Wright Group, Inc. and each other. For the reasons fully explained below, the Court

(1) GRANTS Metro's motion for summary judgment against Blue Circle;

(2) DENIES Blue Circle's motion for summary judgment against Metro;

(3) GRANTS Metro's motion for summary judgment against Bennett & Wright;

(4) and DENIES Metro's motion for summary judgment against Bennett & Wright.

## I. Facts

Defendant Blue Circle, Inc. ("Blue Circle") is the owner of a slag grinding and handling plant located in Detroit. In the fall of 1999, Blue Circle sought bids from contractors to make modifications to the plant, and eventually awarded the contract to Defendant Bennett & Wright Group, Inc. ("B & W"). B & W subcontracted work to Plaintiffs Steelcon, Inc. ("Steelcon") and Metro Industrial Contracting, Inc. ("Metro"). Blue Circle paid B & W pursuant to sworn statements[1] and lien waivers from B & W. However, neither Steelcon nor Metro were paid for their entire work. In 2000, both filed construction liens against Blue Circle; Steelcon filed a construction lien on Blue Circle's property in the amount of $3,212,404.00 and Metro filed a construction lien in the amount of $419,524.04. Blue Circle then posted a bond to discharge Metro's lien, issued by Travelers Casualty and Surety Company of America ("Travelers Casualty"), pursuant to the Michigan Construction Lien Act. See Ex. J; Mich. Comp. Laws Ann. § 570.1116.

On December 20, 2000, Steelcon filed suit in Wayne County Circuit Court against Blue Circle and B & W for breach

---

[1]. The Michigan Construction Lien Act requires general contractors to provide sworn statements with every payment demand. Sworn statements are essentially itemized bills. Owners can refer to the general contractor's sworn statements as a comprehensive list of potential lien claimants. *Vugterveen Sys., Inc. v. Olde Millpond Corp.*, 454 Mich. 119, 560 N.W.2d 43, 45 (1997).

of contract and seeking to foreclose their construction lien. On January 9, 2001, Metro filed suit in Wayne County Circuit Court against Blue Circle and B & W for breach of contract, unjust enrichment, and seeking to foreclose their construction lien. Pursuant to 28 U.S.C. § 1441, Blue Circle removed both suits to the United States District Court for the Eastern District of Michigan, based on diversity jurisdiction, and the suits were consolidated in this Court. On January 19, 2001, Blue Circle filed a cross-complaint against B & W alleging breach of contract.

On May 15, 2001, Blue Circle moved for partial summary judgment, and on October 10, 2001, this Court held a hearing on the motion. In an order dated November 5, 2001, the Court granted in part and denied in part Blue Circle's motion. Blue Circle had argued that there was no genuine issue of material fact that (1) the balance due on its contract with B & W is $388,821.58; (2) that Michigan law prohibits the value of Plaintiffs' construction liens from exceeding the contract balance, and (3) therefore the value of construction liens, combined, could not exceed $388,821.50. Blue Circle also moved for summary judgment on Metro's unjust enrichment claim. The Court dismissed without prejudice Metro's unjust enrichment claim. With respect to the construction lien issues, the Court denied Blue Circle's motion because a genuine issue of material fact existed as to the amount of the contract between Blue Circle and B & W.

The Court acknowledged that the Michigan Construction Lien Act (the "Act") permits an owner to limit construction liens by the amount of the contract with the general contractor, less payments made by the owner to the general contractor, "pursuant to either a contractor's sworn statement or a waiver of lien, in accordance with this act." Mich. Comp. Laws Ann. § 507.1107(6). The Court went on to reject Metro's position which would prevent an owner from using this limited defense if the subcontractor asserting the lien provided a notice of furnishing.[2] The Court reasoned that the Act provides owners at least two distinct defenses against construction liens: (1) a defense if the claimant did not provide a Notice of Furnishing, see Mich. Comp. Laws Ann. § 507.1110(7); and (2) a defense which limits the maximum value of liens to the balance on the general contract, see Mich. Comp. Laws Ann. § 507.1107(6). Metro's notice of furnishing may obviate the first defense, but does not impact the second defense.

Currently at issue is Metro's and Blue Circle's motions for summary judgment against B & W and each other. B & W has not responded to the motions.[3]

## II. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See FED.R.CIV.P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S.

2. A notice of furnishing is a notice from subcontractors and suppliers to the owner and general contractor that labor and materials are being spent on the project. The Act requires subcontractors and suppliers to provide a notice of furnishing within twenty days of furnishing the first labor or material. Mich. Comp. Laws Ann. § 570.1109.

3. Since filing these motions, Steelcon and Blue Circle settled their dispute. Therefore, although Blue Circle's motion included a motion for summary judgment against Steelcon, this order does not address that motion.

242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505.

The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S.Ct. 2505. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

## III. Analysis

### A. Metro and Blue Circle's Cross–Motions for Summary Judgment

Metro and Blue Circle's cross-motions for summary judgment address three issues: whether Blue Circle's payments to B & W on the Contract limit their liability on the construction liens; if so, to what amount Metro is entitled to recover from Blue Circle; and whether Metro is entitled to attorney fees as provided in the Act. The Court first addresses the decisive issue of whether Blue Circle's payments to B & W limit its liability to Metro.

### 1. Construction Lien

Section 107, paragraph 6 of the Act states as follows:

> If the real property of an owner or lessee is subject to construction liens, the sum of the construction liens shall not exceed the amount which the owner or lessee agreed to pay the person with whom he or she contracted for the improvement as modified by any and all additions, deletions, and any other amendments, less payments made by or on behalf of the owner or lessee, pursuant to either a contractor's sworn statement or a waiver of lien, in accordance with this act.

> Mich. Comp. Laws Ann. § 570.1107(6) (West 1996).

Based on this statute, Blue Circle seeks judgment that Steelcon's and Metro's combined lien claims may not exceed the unpaid balance on the Blue Circle/B & W contract. Metro, on the other hand, contends that once it provided a notice of furnishing, Blue Circle may no longer rely on B & W's sworn statements and lien waivers.

■ This Court rejected Metro's position in the November 5, 2001 Order. But under the law of the case doctrine, a court may revisit a previous holding if it was clearly erroneous and would work a manifest injustice. *See Equal Employment Opportunity Comm'n v. United Ass'n of Journeymen and Apprentices of Plumbing & Pipefitting Indus. of U.S. and Can.,* 235 F.3d 244, 249 (6th Cir.2000). For the reasons explained below, the Court finds its previous holding in this case was both clearly erroneous and would impose manifest injustice, and therefore the Court opts to revisit the issue.

The Act provides that by providing a notice of furnishing a subcontractor protects its ability to claim a construction lien. A notice of furnishing protects the owner as well by alerting the owner to a potential lien claimant, "which allows the owner to scrutinize sworn statements and require lien waivers from those parties that have provided notices of furnishing." Mark L. McAlpine & Patrick J. Keating, Construction Liens in Michigan § 4–15 (Supp 2001). Accordingly, § 570.1110(7) provides that an owner may not rely on a general contractor's sworn statements to avoid a construction lien if a subcontractor has provided a notice of furnishing.[4] To ensure that the owner is aware of this provision and is able to take appropriate measures to protect itself from liens, the sworn statement form provided in § 570.1110(7) includes this warning:

> WARNING TO OWNER OR LESSEE: AN OWNER OR LESSEE OF THE * * *PROPERTY MAY NOT RELY ON THIS SWORN STATEMENT TO AVOID THE CLAIM OF A SUBCONTRACTOR, SUPPLIER, OR LABORER WHO HAS PROVIDED A NOTICE OF FURNISHING OR A LABORER WHO MAY PROVIDE A NOTICE OF FURNISHING * * *UNDER SECTION 109 OF THE CONSTRUCTION LIEN ACT, 1980 PA 497, M.C.L. § 570.1109, TO THE DESIGNEE OR TO THE OWNER OR LESSEE IF THE DESIGNEE IS NOT NAMES OR HAS DIED.

■ Section 570.1107(6), which protects owners by capping the value of construction liens at the contract balance specifically provides that an owner's liability is limited only if paid a contractor "pursuant to either a contractor's sworn statement or a waiver of lien, in accordance with this act." This section cannot be read in isolation apart from the other provisions of the Act. The last phrase specifically instructs the Court to look to other sections of the Act, if necessary, to determine if Blue Circle's payments were made in such a way as to grant it protection. Reading § 570.1107(6) and § 570.1110(7) together, an owner may not limit the amount of a subcontractor's lien if the subcontractor provided a notice of furnishing. *See* Keating, *supra*, at § 4.20 ("A literal reading of [§ 570.1110(7) ] would counsel the owner not to rely on the sworn statement and instead to obtain a full unconditional waiver from the subcontractor who provided the notice of furnishing.").

The Court finds, therefore, that if a subcontractor properly supplies a notice of furnishing, the owner is not protected by § 570.1107(6) by relying on the general contractor's sworn statements.

■ This same policy applies to lien waivers. If a subcontractor supplies a notice of furnishing, an owner may not rely on a lien waiver from the general contractor to gain the protection of § 570.1107(6). A recent Michigan Court of Appeals decision supports this conclusion. *See Schuster Const. Serv. Inc. v. Painia Dev. Corp.,* 251 Mich.App. 227, 651 N.W.2d 749 (2002). In *Schuster,* the Michigan Court of Appeals interpreted § 570.1109(6). Generally, that subsection describes the requirement for subcontractors and suppliers to provide a notice of furnishing. Paragraph six of that section provides:

> The failure of a lien claimant, to provide a notice of furnishing within the time

---

**4.** An owner, lessee, designee, mortgagee, or contractor may rely on a sworn statement prepared by a party other than himself or herself to avoid the claim of a subcontractor, supplier, or laborer unless the subcontractor, supplier, or laborer has provided a notice of furnishing as required under section 109 or unless the notice of furnishing is excused under section 108 or 108a.

Mich. Comp. Laws Ann. § 570.1110(7).

specified in this section shall not defeat the lien claimant's right to a construction lien for work performed or materials furnished by the lien claimant before the service of the notice of furnishing except to the extent that payments were made by or on behalf of the owner or lessee to the contractor pursuant to either a contractor's sworn statement or a waiver of lien in accordance with this act for work performed or material delivered by the lien claimant.

The court held that even though the owner paid the general contractor pursuant to the general's lien waivers, in order to have protected itself from construction liens it should have paid pursuant to a lien waiver from the supplier. *Id.* at 755 n. 7.[5]

That same policy applies to § 570.1107(6). Just like § 570.1109(6), it protects owners from construction liens, and from paying twice for the same work, if the owner pays pursuant to lien waivers. Moreover, application of the policy is even stronger when the claimant provides a notice of furnishing. In *Schuster*, even though the supplier did not provide a notice of furnishing, the court still insisted that the owner pay pursuant to lien waivers signed by the claimant. *Id.* at 751. As in the present case, when a subcontractor does provide a notice of furnishing, the owner is aware of the subcontractor's efforts on the project and it is fair to protect the owner only if the lien waivers are from the claimant. *See* Keating, *supra*, at § 4.15, § 4.20.

■ Applying the Act to this case, the Court finds that subsection 107(6) does not limit Metro's lien. Metro satisfied the notice of furnishing requirement.[6] Its notice of furnishing prevents Blue Circle from limiting Metro's construction lien because Blue Circle was not entitled to rely on B & W's sworn statements. Likewise, Blue Circle may not rely on B & W's lien waivers, and did not receive lien waivers from Metro. Therefore, Blue Circle did not pay pursuant to "a contractor's sworn statement or a waiver of lien, in accordance with this act" and Metro's lien is not limited by the contract balance on the Blue Circle/B & W contract. Since Metro's lien is not limited, the Court does not address the issues of the amount of the contract balance and the pro-rata distribution of the contract balance.

Whether or not judgment for Metro should be entered is governed by Fed. R.Civ.P. 54(b):

When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Blue Circle's cross-claim against B & W qualifies this case as one falling under the rule. Neither party addressed this rule in their briefs or oral arguments, but the Court directs final judgment for Metro against Blue Circle because Metro has requested a judgment and the Court is unaware of any reason to delay judgment.

## 2. Attorney Fees

The Act permits the Court to award attorney fees: "The court may allow rea-

---

5. The *Schuster* court did not address the specific issue in the present case because the owner did not pay pursuant to sworn lien waivers. Even if it did, the supplier did not provide a notice of furnishing until after the project was completed.

6. Even though Metro did not provide a written notice of furnishing, it satisfied the Act's notice of furnishing requirement by giving Blue Circle actual notice of its work on the Project. *See Vugterveen*, 560 N.W.2d at 48. Blue Circle does not contest this point.

sonable attorneys' fees to a lien claimant who is the prevailing party." Mich. Comp. Laws Ann. § 570.1118(2). Courts' awarding of attorney fees is discretionary. *See Superior Products Co. v. Merucci Bros., Inc.,* 107 Mich.App. 153, 309 N.W.2d 188, 190–91 (1981).

▮▮ Metro claims it has incurred $47,263.75 in attorney fees, and $5,065.58 in costs, but has not provided enough evidence for the Court to make an award. Appropriate factors for the Court to consider in assessing attorney fees include the complexity of the case and whether the number of hours can reasonably be justified. *Superior Products,* 309 N.W.2d at 191. Metro has the burden to establish the reasonableness of its attorney fees. *See Solution Source, Inc. v. LPR Assoc. Ltd. P'ship,* 252 Mich.App. 368, 652 N.W.2d 474, 482 (Mich.Ct.App.2002). In support of its motion for fees, Metro attached the affidavit of Edward Buckle, President of Metro, who testified that the legal fee of $47,263.75 is reasonable. *See* Metro Ex. L. Presumably, Metro appreciates that this evidence alone is insufficient to establish whether its legal fees are reasonable because it requests permission to file a bill of particulars regarding its attorneys fees. The Court GRANTS Metro's motion for attorneys fees, the amount to be determined upon further submissions from the parties.

### B. Metro's Motion for Summary Judgment Against B & W

When a motion for summary judgment is unopposed, as it is in the case of Metro's motion against B & W, the Court must still determine if the moving party has met its burden to prove the absence of a genuine issue of material fact. *See Guarino v. Brookfield Township Trustees,* 980 F.2d 399 (6th Cir.1992); *Donlin v. Watkins,* 814 F.2d 273, 277 (6th Cir.1987). The Court is not required, however, to search the record for material issues of fact on behalf of the adverse party. *Guarino,* 980 F.2d at 404.

▮▮ In this case, Metro's evidence shows that it fully and property performed all of its obligations under its subcontract with B & W. (Carducci Aff. ¶ 12, attached as Metro's Ex. A.) Diego Carducci, B & W's project manager for the Blue Circle project, accepted and approved Metro's work, and averred that "all of the work performed by Metro was within the scope of its work under the B & W/Metro Subcontract, and was also within the scope of work in the B & W/Blue Circle base Contract and approved change orders." *Id.* The evidence also shows that the balance due to Metro under the contract is $443,507.17, excluding interest.[7] (Robert Carlson Aff. ¶ 13, attached as Metro's Ex. E.) Accordingly, Metro's motion for summary judgment against B & W is GRANTED.[8]

---

7. Throughout Metro's brief, it claims it is entitled to $443,517.17. However, Robert Carlson's Affidavit, to which Metro's brief cites in support of its claim amount, states the correct balance owed is $443,507.17. The Court therefore uses the $443,507.17. figure. Furthermore, Metro's original lien claim was for $419,524.04. Robert Carlson, Vice President for Operations of Metro, averred that the original claim was mistakenly understated, and that the actual balance due Metro is $443,507.17. Good faith understatement of a lien does not invalidate the actual value of the lien so long as there is no prejudice to the owner or other lienholders. Here, Blue Circle does not claim prejudice, nor does it otherwise contest Metro's adjustment of the lien amount. Therefore, the Court finds that the lien is in the amount of $443,507.17.

8. Blue Circle argued that summary judgment on Metro's construction lien cannot be determined until Metro's claim against B & W is resolved. Even assuming that Blue Circle is correct that Metro's contract claim against B & W must be resolved first, this Order also

## C. Blue Circle's Motion Against B & W

Blue Circle moves for summary judgment only as to liability on its breach of contract claim against B & W. Blue Circle alleges the following breaches:

(1) B & W failed to provide a lien-free project in breach of Contract Clause 59.2. This clause required B & W to promptly apply all payments to the costs of the labor and materials and take any and all steps to keep the Project free and clear of liens. If a lien were filed, B & W was required to bond-off the lien within seven days of written demand, and Blue Circle would be allowed to retain out of any payment due or to become due an amount sufficient to indemnify Blue Circle against such lien including reasonable attorney fees, costs, and expenses.

(2) Contract Clause 6 prohibits B & W from assigning its rights or obligations without the written consent of the owner. In violation of Clause 6, B & W assigned to Steelcon all rights that B & W had against Blue Circle arising out of or relating to B & W's contract with Steelcon. (Def.Ex.9.)

(3) Contract Clause 11 addresses certain grounds for default. Among other bases, if B & W at any time became insolvent or failed in its performance of any of the conditions of the Contract, then it would be in default under the Contract. After notice of default, and forty-eight hours to cure, Blue Circle could recover from B & W all losses and damages, and all reasonable attorney fees suffered or incurred by Blue Circle as a result of B & W's default.

(4) Contract Clause 25 required B & W to complete the Project in conformity with the Contract schedule.

Blue Circle has not yet determined the amount of damages caused by B & W's alleged breaches, and accordingly its motion is for summary judgment on liability alone.

Except for the breach of Contract Clause 6, Blue Circle's brief does not identify evidence to support their allegations of the breaches. Instead, Blue Circle only states in its brief that none of the breaches are disputed. (Def. Br. at 18.) As stated above, even when a motion for summary judgment is uncontested, the Court must still be satisfied that there is no genuine issue of material fact. Furthermore, "[w]here the evidentiary matter in support of the [summary judgment] motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Fed.R.Civ.P. 56, Advisory Committee Notes to the 1963 Amendment. Thus, Blue Circle's assertion during oral argument that the Court should grant its motion because it is uncontested is not conclusive.

Blue Circle attached one affidavit and five complete depositions to its brief. However, it is the parties' obligation to identify the specific evidence in support of its motion. *See United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991). Blue Circle must produce and identify the specific evidence in the record that show B & W's breach. Therefore, because the movant for summary judgment has the initial burden to show the absence of a genuine issue of material fact, *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548, and Blue Circle has not met this initial burden, the motion is DENIED WITHOUT PREJUDICE. Blue Circle is given leave to file an amended motion for summary judgment against B & W within sixty days.

## IV. Conclusion

For the reasons stated above, the Court hereby orders as follows:

grants Metro's motion for summary judgment against B & W, so this argument is meritless.

(1) Metro's motion against Blue Circle is GRANTED;

(2) Blue Circle's motion against Metro is DENIED;

(3) Metro's motion against B & W is GRANTED; and

(4) Blue Circle's motion against B & W is DENIED WITHOUT PREJUDICE. Blue Circle is GRANTED leave to file a motion for summary judgment against B & W, together with supporting evidence and citations thereto, within sixty days.