ERB LUMBER COMPANY v HOMEOWNER CONSTRUCTION LIEN
RECOVERY FUND

Docket Nos. 150628, 159195. Submitted March 15, 1994, at Detroit.
Decided September 19, 1994, at 9:15 A.M. Leave to appeal
sought.

Erb Lumber Company brought in the Oakland Circuit Court an
action against the Homeowner Construction Lien Recovery
Fund, D.A. Derusha, Inc., and others, seeking to enforce a
construction lien for materials supplied in the construction of a
residence, and a similar action against the fund, Vittorio A.
Basilisco, Jr., and others. In each of the actions, the fund
consented to a judgment in favor of Erb Lumber and agreed to
pay Erb Lumber's claim except for a time-price differential
charge provided under the supply contract of two percent a
month for payments not made within 150 days of delivery of
materials. The court, Hilda R. Gage, J., and Deborah G. Tyner,
J., subsequently determined that Erb Lumber's construction
liens included the time-price differential charges and ordered
the fund to pay the charges. The fund appealed in each case,
and the appeals were consolidated.

The Court of Appeals *held:*

A lien acquired pursuant to the Construction Lien Act may
not exceed the amount of the lien claimant's contract less
payments made on the contract. In these consolidated cases,
the time-price differential provision of the supply contracts set
the contract amounts depending on when payments were made.
Accordingly, the time-price differential charges, as part of the
supply contracts, properly were included in the construction
liens.

Affirmed.

Mechanics' Liens — Construction Lien Act — Time-Price Differ-
ential Charges.

A lien acquired pursuant to the Construction Lien Act includes
time-price differential charges where the contract to furnish

References
Am Jur 2d, Mechanics' Liens §§ 81, 112.
See ALR Index under Mechanics' Liens.

labor or materials provides that a percentage of the outstanding balance will be added periodically to the contract price if payment is not made by a certain date (MCL 570.1101 *et seq.*; MSA 26.316[101] *et seq.*).

*May, Simpson & Strote* (by *Ronald P. Strote* and *John A. Forrest*), for Erb Lumber Company.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Michael A. Lockman* and *Jack Blumenkopf,* Assistant Attorneys General, for Homeowner Construction Lien Recovery Fund.

Before: MURPHY, P.J., and MARILYN KELLY and W. C. BUHL,* JJ.

MARILYN KELLY, J. In these consolidated cases, the defendant, Homeowner Construction Lien Recovery Fund, appeals as of right from orders in two separate construction lien actions granting Erb Lumber's motion for summary disposition. MCR 2.116(C)(10). We affirm.

I

In the first case, Docket No. 150628, Erb Lumber provided building materials and supplies to D.A. Derusha, Inc. for a residence that the contractor was building for George P. and Mary Alice Johnson. The supply contract provided that payment for materials must be made within 150 days of delivery. If not, a time-price differential charge of two percent per month would be added until the total was fully paid.

Erb sought to recover pursuant to the Construction Lien Act. MCL 570.1101 *et seq.*; MSA 26.316(101) *et seq.* Because the structure was a residence, Erb was required to name the State of

* Circuit judge, sitting on the Court of Appeals by assignment.

Michigan, Department of Licensing and Regulation, Homeowner Construction Lien Recovery Fund as a party. MCL 570.1201 *et seq.*; MSA 26.316(201) *et seq.*

Erb obtained a consent judgment in which the Fund agreed to pay Erb Lumber's entire lien claim except for the time-price differential which the Fund refused to pay. Erb moved for summary disposition on the question of whether the time-price differential charge was properly included in Erb's lien claim and whether the Fund was liable for the amount. The circuit court judge found in favor of Erb Lumber, concluding that the time-price differential was properly included in the construction lien claim. The Fund appeals only from inclusion of the time-price differential in the construction lien claim.

II

In Docket No. 159195, while the contractor and the homeowners involved were different, the facts are similar. The homeowners and the Fund entered into a partial consent judgment with Erb Lumber but again disputed the Fund's duty to pay the time-price differential. The judge in that case also granted Erb's motion for summary disposition on the question. The Fund appeals from the trial court's decision. The Court of Appeals consolidated the two cases on March 31, 1993.

III

The Fund contends that the two percent time-price differential is not an improvement as the term is defined in the Construction Lien Act. MCL 570.1104; MSA 26.316(104). It also argues that both the language of the statute and case law

demonstrate that interest payments are not properly included in determining the amount of a lien. MCL 570.1107; MSA 26.316(107).

Two sections of the Construction Lien Act are relevant to resolution of the dispute. MCL 570.1107; MSA 26.316(107) provides in part:

> (1) Each contractor, subcontractor, supplier, or laborer who provides an improvement to real property shall have a construction lien upon the interest of the owner or lessee who contracted for the improvement to the real property . . . . A construction lien acquired pursuant to this act shall not exceed the amount of the lien claimant's contract less payments made on the contract. [MCL 570.1107; MSA 26.316(107).]

The term "improvement" is defined in MCL 570.1104; MSA 26.316(104):

> (7) "Improvement" means the result of labor or material provided by a contractor, subcontractor, supplier, or laborer, including, but not limited to, surveying, engineering and architectural planning, construction management, clearing, demolishing, excavating, filling, building, erecting, constructing, altering, repairing, ornamenting, landscaping, paving, leasing equipment, or installing or affixing a fixture or material, pursuant to a contract. [MCL 570.1104; MSA 26.316(104).]

A fundamental rule of statutory construction is to ascertain and give effect to the intent of the Legislature. *Farrington v Total Petroleum, Inc,* 442 Mich 201, 212; 501 NW2d 76 (1993). The first criterion to consider in determining intent is the specific language of the statute. *House Speaker v State Administrative Bd,* 441 Mich 547, 567; 495 NW2d 539 (1993).

The Legislature is presumed to have intended

the meaning it plainly expressed, and the statute must be enforced as written. *Frasier v Model Coverall Service, Inc,* 182 Mich App 741, 744; 453 NW2d 301 (1990). Unless defined in the statute, words and phrases should be accorded their plain and ordinary meanings. MCL 8.3a; MSA 2.212(1); *People v Tracy,* 186 Mich App 171, 176; 463 NW2d 457 (1990).

When the term "improvement", defined in MCL 570.1104; MSA 26.316(104), is used in MCL 570.1107; MSA 26.316(107), it does not fix or define the extent of the lien as the Fund contends. Rather, it identifies the parties who are eligible to seek a lien. Thus, despite the Fund's claims to the contrary, use of the term "improvement" in MCL 570.1107; MSA 26.316(107) is not helpful in determining which sums can properly be included in a construction lien. However, the same section of the statute provides that the amount of the lien is calculated by taking the lien claimant's contract price, less the amount already paid on it.

Thus, it becomes necessary to decide if the two percent time-price differential was part of the contract price of the materials. The Fund argues that the time-price differential amounts to a finance charge and should not be considered part of the contract price. However, the cases cited in support of its position are unpersuasive.

III

A

The Fund relies on *Brede v Rose,* 236 Mich 651; 211 NW 58 (1926). In that case, our Supreme Court limited recovery under a lien to the work performed and the materials used. The plaintiff and the defendant had entered into an agreement whereby the plaintiff would decorate and paint the

defendant's home. A dispute arose in connection with the plaintiff's workmanship, and the defendant refused to allow the plaintiff to complete the work. The trial court rendered a judgment for the plaintiff in quantum meruit, and the defendant appealed. Our Supreme Court agreed that the plaintiff was entitled to recover but excluded profit and overhead from the judgment amount. In reaching its decision, the Court implicitly accepted that profit and overhead are included in a contract price. The Court also suggested that, had plaintiff proceeded on a contract theory, he would have been entitled to recover a portion of the overhead and profit. However, as plaintiff had sued under a quantum meruit theory, he was entitled to recover only for the value of the work done and materials furnished up to the time of the breach.

In contrast to the plaintiff in *Brede,* plaintiff here relies on the terms of the contract to establish its costs. By including a time-price differential, plaintiff essentially set differing costs for the materials depending on when they were paid for after delivery. Following *Brede,* since the contract terms established the cost of the materials, and profit and overhead were included, plaintiff is entitled to recover the time-price differential as well. Furthermore, the statute here clearly contemplates that recovery is based on the value of the contract less amounts already paid.

III

B

Defendant also relies on *North v Globe Fence Co,* 144 Mich 557; 108 NW 285 (1906). In *North,* the Court held that the amount of the lien could not include materials that were furnished but not used pursuant to the contract. However, the lan-

guage of the Mechanics Lien Act which was the basis for the Court's decision in *North* was more limiting than the statute at issue here. Thus, the two cases are distinguishable.

## III

### C

Finally, defendant relies on *Canvasser Custom Builders, Inc v Seskin,* 38 Mich App 643; 196 NW2d 859 (1972). In *Canvasser,* our Court stated that the amount of a mechanic's lien is limited to the extent of the enhancing value of the lien claimant's material and labor. *Id.,* p 647. The statement was dictum and did not cite supporting law. In the case before us, a statute is under consideration that does not contain or suggest such a limitation, but relies on the terms of the contract to establish the size of the lien.

Thus, we hold that, under the language of the controlling statute, Erb Lumber was entitled to seek a lien which included a sum representing the time-price differential.

Finally, we find the Fund's public policy arguments unpersuasive. Public policy is best served by following the plain language of the statute and allowing the terms of the contract to govern the amount of a construction lien.

Affirmed.