MICHIGAN PIPE AND VALVE–LANSING, INC
v HEBELER ENTERPRISES, INC

Docket No. 294530. Submitted March 9, 2011, at Lansing. Decided March 22, 2011. Approved for publication May 3, 2011, at 9:05 a.m. Leave to appeal denied, 490 Mich 874.

Michigan Pipe and Valve–Lansing, Inc. (MPV), brought an action in the Genesee Circuit Court against Hebeler Enterprises, Inc., Firstbank–St. Johns, Grand River Infrastructure Inc. (GRI), and others in connection with construction liens filed by MPV and GRI. MPV and GRI had provided materials to Hebeler Enterprises, Inc., which had been hired to build the infrastructure and roads on property intended to be developed into a residential subdivision, but Hebeler failed to pay the amounts due under their contracts. The court, Randy L. Tahvonen, J., concluded that both MPV and GRI had properly perfected construction liens that were coequal in priority to each other but were superior to the mortgage on the property held by Firstbank because a test well drilled on the property shortly before Firstbank recorded its mortgage constituted an actual physical improvement to the property for purposes of MCL 570.1103(1), part of the Construction Lien Act, MCL 570.1101 *et seq*. The court granted MPV and GRI summary disposition. Firstbank appealed the court's determination that the well constituted an actual physical improvement. MPV cross-appealed the court's refusal to include in the amount of its lien any amount for the service charge provided for by the terms of its contract.

The Court of Appeals *held*:

1. MCL 570.1119(3) provides that construction liens have priority over all other interests, liens, and encumbrances that were recorded after the first actual physical improvement made to the property. MCL 570.1103(1) defines "actual physical improvement" as including a readily visible actual physical change in real property that would alert a person upon reasonable inspection of the existence of an improvement, but specifically excludes certain preparations for changes or alterations to the property. The well drilled to obtain a water sample was an actual physical improvement. The fact that the well did not add any value to the property

did not affect its status as an actual physical improvement under the statutory definition. In addition, the well was not similar to the exceptions provided for by the statute because unlike the statutory exceptions, which include such things as surveying and soil testing, the well left a permanent presence on the property. The trial court did not err by concluding that the construction liens held by MPV and GRI were superior in priority to Firstbank's mortgage on the property.

2. MCL 570.1107(1) authorizes a construction lien for a contractor, subcontractor, supplier, or laborer who provides an improvement to real property pursuant to a contract. The amount of the lien is determined by the terms of the contract and cannot exceed the amount of the lien claimant's contract less payments made. In turn, MCL 570.1107(7) limits the amount of interest that can be included in a construction lien for an improvement to a residential structure to the amount accrued under the contract up to 90 days after the claim of lien is recorded. While MPV did not provide supplies for an improvement to a residential structure and MCL 570.1107(7) thus did not apply to this case, the statutory provisions must nonetheless be read together to produce a harmonious whole. When a contract provides for the assessment of a service charge on past due amounts, this constitutes a type of interest similar to a time-price differential that may be included in the amount of a construction lien. Read together, the statutes provide that the amount of the lien claimant's contract includes all interest charges contemplated by the contract, and MPV was entitled to a lien that included a sum representing the service charge. The trial court erred by concluding that MPV could not include a service charge in the amount of its construction lien.

Affirmed in part and reversed in part.

1. LIENS — CONSTRUCTION LIEN ACT — ACTUAL PHYSICAL IMPROVEMENTS — WELLS.

Construction liens have priority over all other interests, liens, and encumbrances that were recorded after the first actual physical improvement made to the property; actual physical improvements include a readily visible actual physical change in real property that would alert a person upon reasonable inspection of the existence of an improvement; a well drilled to obtain a water sample is an actual physical improvement, regardless of whether the well adds any value to the property (MCL 570.1103[1]).

2. LIENS — CONSTRUCTION LIEN ACT — AMOUNT OF LIEN CLAIMANT'S CONTRACT — SERVICE CHARGES.

The amount of a construction lien is determined by the terms of the contract; if a contract provides for a service charge on all past due amounts, that charge constitutes an interest charge contemplated by the contract and should be included in the amount of the lien claimant's contract for purposes of determining the amount of the construction lien (MCL 570.1107[1], [7]).

*Loomis, Ewert, Parsley, Davis & Gotting, P.C.* (by *Jeffrey S. Theuer* and *Sara L. Cunningham*), for Michigan Pipe and Valve–Lansing, Inc.

*The Gallagher Law Firm, PLC* (by *Byron P. Gallagher, Jr.*, and *Michael S. Hill*), for Firstbank–St. Johns.

*Winegarden Haley Lindholm & Robertson, P.L.C.* (by *Alan F. Himelhoch* and *Donald H. Robertson*), for Grand River Infrastructure, Inc.

Before: SHAPIRO, P.J., and HOEKSTRA and TALBOT, JJ.

PER CURIAM. Appellant Firstbank-St. Johns appeals as of right the judgment of foreclosure. Specifically, Firstbank appeals the trial court's order granting summary disposition under MCR 2.116(C)(10) to appellees Michigan Pipe and Valve–Lansing, Inc. (MPV), and Grand River Infrastructure, Inc. (GRI), on MPV's and GRI's claims that their construction liens had priority over its mortgage. MPV cross-appeals the trial court's order that its construction lien could not include any sums representing a service charge. We affirm in part and reverse in part.

I. BASIC FACTS AND PROCEDURAL HISTORY

Windy Pines View, L.L.C., is the owner of property in St. Johns, Michigan. Windy Pines intended to develop

the property into a 77-unit residential subdivision. To secure financing for the project, Windy Pines granted a mortgage on the property to Firstbank. Firstbank recorded the mortgage on February 10, 2005.

Two days earlier, on February 8, 2005, F & W Well Drilling, Inc., had drilled a 245-foot deep well on the property. A plastic casing was placed in the well from 140 feet below grade to 1 foot above grade. The well, which was used to obtain a water sample from the aquifer below the property, was capped after Windy Pines decided that the subdivision would be serviced by the Bingham Township municipal water supply.

In 2007, Windy Pines contracted with Hebeler Enterprises, Inc., to build the "[i]nfrastructure and roads." Hebeler purchased pipe and other materials from MPV and GRI. Hebeler's contract with GRI contained the following provision:

> The undersigned agrees to pay GRI's credit price for all amounts unpaid after 30 days from invoice date. Under the credit price terms, time price differential charges will accrue on all such amounts at the rate of 1.5% per month (18% per annum). Accordingly, it is agreed that the timeliness of payment for the goods and/or service provided is an integral part of the price of those goods and/or services and is thus an integral part of this agreement.

MPV's contract contained a somewhat similar provision: "For open credit sales, terms of payment are NET 30 DAYS from invoice date. A service charge of 1¹/₂% per month or any lesser charge reflecting the maximum amount legally permissible will be added to all past due accounts."

Although it was paid in full by Windy Pines, Hebeler failed to pay MPV and GRI the total amounts due under the contracts. Consequently, GRI filed a claim of lien

against the property in February 2008 and MPV filed a claim of lien in May 2008.

Thereafter, this litigation was commenced to foreclose on the liens. The parties filed cross-motions for partial summary disposition under MCR 2.116(C)(10). Relevant to this appeal, the issues were whether the well drilled days before the recording of Firstbank's mortgage constituted an "actual physical improvement" under MCL 570.1103(1) and whether MPV could recover service charges as provided in its contract with Hebeler.

The trial court held that the drilling of the well on February 8, 2005, was an actual physical improvement to the property and, therefore, pursuant to MCL 570.1119, the liens filed by MPV and GRI had priority over Firstbank's mortgage. The trial court determined that the amount of GRI's lien was $46,459.24, plus sums representing the time-price-differential charges of 1.5 percent a month. It also concluded that the amount of MPV's lien was $153,639.68, which did not include the 1.5 percent a month "service charge" provided for in its contract.

## II. STANDARDS OF REVIEW AND RULES OF STATUTORY INTERPRETATION

We review de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."

We also review de novo questions of statutory interpretation. *Bates v Gilbert*, 479 Mich 451, 455; 736 NW2d 566 (2007). The goal of statutory interpretation is to

give effect to the intent of the Legislature. *Kuznar v Raksha Corp*, 481 Mich 169, 176; 750 NW2d 121 (2008). If the language of the statute is unambiguous, the Legislature is presumed to have intended the meaning plainly expressed, and judicial construction is not permitted. *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 141; 783 NW2d 133 (2010). An unambiguous statute must be enforced as written. *Klida v Braman*, 278 Mich App 60, 64; 748 NW2d 244 (2008). "[A] court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). When a statute defines a given term, that definition controls. *Kuznar*, 481 Mich at 176.

### III. ACTUAL PHYSICAL IMPROVEMENT

On appeal, Firstbank argues that the trial court erred by holding that the well was an actual physical improvement. We disagree.

MPV and GRI filed their lien claims under the Construction Lien Act (CLA), MCL 570.1101 *et seq.* MCL 570.1119(3) addresses the priority of construction liens:

> A construction lien arising under this act shall take priority over all other interests, liens, or encumbrances which may attach to the building, structure, or improvement, or upon the real property on which the building, structure, or improvement is erected when the other interests, liens, or encumbrances are recorded subsequent to the first actual physical improvement.

The date of the "first actual physical improvement" is the date that construction liens attach to the property for determining priority among competing liens and encumbrances. *M D Marinich, Inc v Mich Nat'l Bank,*

193 Mich App 447, 454-455; 484 NW2d 738 (1992). The CLA defines "actual physical improvement" as

> the actual physical change in, or alteration of, real property as a result of labor provided, pursuant to a contract, by a contractor, subcontractor, or laborer which is readily visible and of a kind that would alert a person upon reasonable inspection of the existence of an improvement. Actual physical improvement does not include that labor which is provided in preparation for that change or alteration, such as surveying, soil boring and testing, architectural or engineering planning, or the preparation of other plans or drawings of any kind or nature. Actual physical improvement does not include supplies delivered to or stored at the real property. [MCL 570.1103(1).]

Firstbank advances two arguments in support of its claim that the well in this case was not an actual physical improvement. Initially, it argues that the well did not meet the definition of an "actual physical improvement" because the well did not add any value to the property. In support of this argument, it cites Barron's Law Dictionary for the proposition that improvements to real property are generally thought to increase the value of the property.

Firstbank's reliance on a dictionary definition is unavailing because the CLA definition of "actual physical improvement" controls. *Kuznar*, 481 Mich at 176. Further, nothing in the unambiguous definition of "actual physical improvement," MCL 570.1103(1), requires that the improvement add value to the real property. We may not read such a requirement into the definition. *Roberts*, 466 Mich at 63. Accordingly, we reject Firstbank's argument that the well was not an actual physical improvement because it did not add value to the property.

Next, Firstbank asserts that the well fell within the exception identified in MCL 500.1103(1) for "labor

which is provided in preparation for that change or alteration . . . ." In doing so, Firstbank does not suggest that the well was not an "actual physical change in . . . real property . . . which [was] readily visible and of a kind that would alert a person upon reasonable inspection of the existence of an improvement," MCL 570.1103(1). Instead, Firstbank maintains that the exception provided for in the definition encompasses what it calls the "due diligence process." Under this interpretation, Firstbank argues that the well was only a test well and, therefore, not an actual physical improvement.

As defined in MCL 570.1103(1), an actual physical improvement "does not include that labor which is provided in preparation for that change or alteration, such as surveying, soil boring and testing, architectural or engineering planning, or the preparation of other plans or drawings of any kind or nature." We do not dispute that the exceptions provided may suggest the recognition of a due-diligence process that involves the specific procedures stated in the statute. Nor does the plain language of the statute, which includes the phrase "such as," suggest that the list is exhaustive. However, none of the procedures identified in the statute as an exception equates with the digging of a well or any other act that makes a readily visible physical change to the property. To the contrary, the acts identified in the statute are all of a nature that will not leave a permanent presence on the property. Consequently, we conclude that Firstbank's assertion that the exception encompasses all acts done in the "due diligence process" is not supported by the plain and unambiguous language of MCL 570.1103(1).

Because Firstbank's mortgage was recorded after the digging of the well, which was the first actual physical

improvement to the property, the construction liens filed by MPV and GRI had priority over Firstbank's mortgage. MCL 570.1119(3). Accordingly, the trial court did not err by granting priority to the liens held by MPV and GRI.

### IV. SERVICE CHARGE

On cross-appeal, MPV argues that the trial court erred by holding that its construction lien could not include any amounts for the service charge that was specified in its contract with Hebeler. We agree.

MCL 570.1107(1) provides:

> Each contractor, subcontractor, supplier, or laborer who provides an improvement to real property has a construction lien upon the interest of the owner or lessee who contracted for the improvement to the real property . . . . A construction lien acquired pursuant to this act shall not exceed the amount of the lien claimant's contract less payments made on the contract.

Pursuant to the plain language of the statute, the amount of the lien is determined by the terms of the contract. *Erb Lumber Co v Homeowner Constr Lien Recovery Fund*, 206 Mich App 716, 722; 522 NW2d 917 (1994). The terms of MPV's contract with Hebeler provided that a service charge of 1.5 percent a month would be added to all past due amounts.

The trial court relied on *Erb Lumber* to conclude that MPV could not include in its lien an amount representing the service charge. In *Erb Lumber*, the supplier's contract provided that payment for materials had to be made within 150 days of delivery and, if not, a time-price-differential charge of two percent a month would be added until the total was fully paid. *Erb Lumber*, 206 Mich App at 717. The Homeowner Construction Lien Recovery Fund agreed to pay the entire amount of the

supplier's lien except for the time-price-differential charges. It argued that the time-price differential was a finance charge and could not be considered part of the contract. *Id.* at 718. This Court disagreed. It reasoned:

> [P]laintiff here relies on the terms of the contract to establish its costs. By including a time-price differential, plaintiff essentially set differing costs for the materials depending on when they were paid for after delivery. . . . [S]ince the contract terms established the cost of the materials, and profit and overhead were included, plaintiff is entitled to recover the time-price differential as well. Furthermore, the statute here clearly contemplates that recovery is based on the value of the contract less amounts already paid. [*Id.* at 721.]

According to the trial court, because "there is a difference between [a] time price differential and a periodic interest rate," *Erb Lumber* did not permit MPV to secure payment of the service charge with its lien claim. We agree that a time-price differential is different from an interest payment or a service charge. A time-price differential relates the cost of an item to the method of payment. See *Grand Blanc Cement Prod, Inc v Ins Co of North America*, 225 Mich App 138, 149 n 3; 571 NW2d 221 (1997) ("A time-price differential charge is the difference between the cash and credit price, the latter being higher.").[1] However, on the basis of MCL 570.1107(7), we conclude that any distinction between a time-price differential and a service charge, when contained in the contract, is a distinction without a difference for purposes of MCL 570.1107(1).

MCL 570.1107(7) provides:

---

[1] Black's Law Dictionary (7th ed) provides similar definitions: "1. A figure representing the difference between the current cash price of an item and the total cost of purchasing it on credit. 2. The difference between a seller's price for immediate cash payment and a different price when payment is made later or in installments."

> After the effective date of the amendatory act that added this subsection, a construction lien of a subcontractor or supplier for an improvement to a residential structure shall only include an amount for interest, including, but not limited to, a time-price differential or a finance charge, if the amount is in accordance with the terms of the contract between the subcontractor or supplier and the contractor or subcontractor and does not include any interest that accrues after 90 days after the claim of lien is recorded.

Subsection (7) was added to MCL 570.1107 in 2006. See 2006 PA 497.[2] According to the legislative analyses, the Legislature added subsection (7) to help ensure the solvency of the Home Owner Construction Lien Recovery Fund. See Senate Legislative Analysis, SB 405 and SB 459, November 21, 2006. The analysis explained that payments from the fund were more than had been anticipated—in part, because of interest added to amounts owed by contractors—and to ensure that the fund remained solvent, interest paid from the fund should be limited. *Id.* Thus, MCL 570.1107(7) limited the amount of interest that could be included in a lien filed against a residential structure: the amount of interest may not include "any interest" that accrues after 90 days of the claim of lien being recorded.

The parties agree that because MPV did not provide supplies for an improvement to a "residential structure,"[3] MCL 570.1107(7) does not apply to the present case. However, because "statutory provisions are not to be read in isolation; rather, context matters, and thus

---

[2] The act took effect on January 3, 2007.

[3] A "residential structure" is defined by the CLA as "an individual residential condominium unit or a residential building containing not more than 2 residential units, the land on which it is or will be located, and all appurtenances, in which the owner or lessee contracting for the improvement is residing or will reside upon completion of the improvement." MCL 570.1106(3).

statutory provisions are to be read as a whole," *Robinson v Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010) (emphasis omitted), subsection (7) of MCL 570.1107 aids in the interpretation of subsection (1).

MCL 570.1107(7) provides that a lien against a residential structure may include an amount for "interest" as long as (1) the amount is in accordance with the terms of the contract and (2) the amount does not include any interest that accrues 90 days after the claim of lien is recorded. The interest that may be included in the lien is that "including, but not limited to, a time-price differential or a finance charge . . . ." *Id.* "[T]he word 'includes' can be used as a term of enlargement or limitation . . . ." *Thorn v Mercy Mem Hosp Corp*, 281 Mich App 644, 650; 761 NW2d 414 (2008) (quotation omitted). It is clear from the context in which it is used in MCL 570.1107(7)—"including, but not limited to"—that the word "including" in subsection (7) is a term of enlargement. Thus, the specific types of interest that are listed in subsection (7), time-price differentials and finance charges, are specific examples of interest that may be included in the claim of lien and not an exhaustive list. See *Thorn*, 281 Mich App at 651.

We conclude that the service charge contained in MPV's contract with Hebeler would fall within the scope of the "amount of interest" that could be included in a lien under MCL 570.1107(7). Interest is "[t]he compensation fixed by agreement or allowed by law for the use or detention of money, or for the loss of money by one who is entitled to its use; [especially], the amount owed to a lender in return for the use of borrowed money." Black's Law Dictionary (7th ed). A service charge, as pertinent to this case, is "[t]he sum of . . . all charges payable by the buyer and imposed by the seller as an incident to the extension of credit." *Id.*

Thus, like a time-price differential and a finance charge, which is "[a]n additional payment, [usually] in the form of interest, paid by a retail buyer for the privilege of purchasing goods or services in installments," *id.*, a service fee is an amount owed in return for the privilege of purchasing goods or services with credit.

Pursuant to MCL 570.1107(1), the amount of a construction lien is determined by the terms of the contract. *Erb Lumber*, 206 Mich App at 722. MCL 570.1107(7) places an additional limitation on the amount of a lien on a residential structure: any "amount of interest" that is in accordance with the contract terms may not include interest that accrues more than 90 days after the claim of lien was filed. An unharmonious result would be reached if interest that is permitted under MCL 570.1107(7) to be included in a construction lien claim against a residential structure could not be included in all other construction lien claims, especially given that subsection (7) was enacted to limit the lien amounts against residential structures. Accordingly, reading MCL 570.1107(1) and (7) together to produce a harmonious result, we hold that the "amount of the lien claimant's contract" includes all interest charges that are contemplated by the contract. Because the service charge of 1.5 percent a month on all past due amounts was an interest charge that was contemplated in MPV's contract with Hebeler, MPV was entitled to a lien that included a sum representing the service charge. The trial court erred by holding to the contrary. We reverse that portion of the order regarding the motions for partial summary disposition and the judgment of foreclosure that precluded MPV from including in its lien a sum representing the service charge.

Affirmed in part and reversed in part.

SHAPIRO, P.J., and HOEKSTRA and TALBOT, JJ., concurred.