# STATE OF MICHIGAN

# COURT OF APPEALS

CAROL DUBUC and DENNIS DUBUC,

        Plaintiffs/Counter-
        Defendants/Appellants,

v

COPELAND PAVING INC.,

        Defendant/Counter-Plaintiff/Cross-
        Defendant,

AJAX MATERIALS CORPORATION,

        Defendant/Counter-Plaintiff/Cross-
        Plaintiff/Appellee,

and

ESSEX PARK LAW OFFICE P.C.,

        Counter-Defendant.

UNPUBLISHED
March 29, 2016

No. 325228
Livingston County Circuit Court
LC No. 13-027785-CK

Before: GLEICHER, P.J., and MURPHY and OWENS, JJ.

PER CURIAM.

Plaintiffs Carol and Dennis Dubuc filed suit challenging construction liens taken against their property by a paving contractor and asphalt supplier. The circuit court ultimately upheld the supplier's lien and ordered the Dubucs to make payment, and the paving company withdrew its claim. The Dubucs take issue with being held liable for the supplier's $32,574 lien when they had already made a down payment to the contractor and owed significantly less than the lien amount under their general contract. Despite the Dubucs' many appellate challenges to this award, the court properly interpreted the Construction Lien Act (CLA), MCL 570.1101 *et seq.* and held the Dubucs liable for the full lien amount. The court also properly awarded the supplier its reasonable attorney fees and costs under the act. We affirm.

-1-

# I. BACKGROUND

Carol and Dennis Dubuc own Essex Park Law Office. On May 30, 2013, the Dubucs contracted with Copeland Paving to repave their parking lot.[1] Copeland entered into a subcontract with Ajax Materials Corporation to supply the necessary asphalt. When Ajax supplied the materials, it served a "notice of furnishing" on the Dubucs through Essex Park. The Dubucs contended that Copeland did not properly grade the parking lot, which caused runoff water to flood a building in the office park. The Dubucs further accused Ajax of supplying, and Copeland of using, less asphalt than contracted for.

The Dubucs had submitted a down payment to Copeland of $25,963. As a result of the difficulties experienced, the Dubucs withheld the remainder due—$24,504. Copeland in turn did not pay Ajax $32,574, which included a time-price differential, owed for the asphalt supplied. Both Copeland and Ajax recorded liens against Essex Park for the amounts owed as permitted by the CLA.

The Dubucs subsequently filed breach of contract and fraud claims against Copeland and Ajax based on the allegedly deficient work and shortfall of asphalt used.[2] Ajax and Copeland responded with countercomplaints against the Dubucs and Essex Park to foreclose on their liens. Copeland accused the Dubucs of breaching their contract by failing to pay the full contract price. And Ajax filed a cross-complaint against Copeland for payment under the subcontract.

Ultimately, Ajax filed a motion for summary disposition of the Dubucs' claims while the claims between Copeland and the Dubucs were still being fleshed out through discovery. The circuit court ruled in Ajax's favor. The Dubucs conceded that they had no contract with Ajax and therefore no breach of contract claim. Moreover, any discrepancy in the amount of asphalt provided was too minimal to support an intent to defraud. The court also ruled in Ajax's favor regarding the validity of its construction lien. As the Dubucs were ordered to pay the entirety of Ajax's damages, Ajax withdrew its cross-complaint against Copeland. Several months later, Copeland and the Dubucs and Essex Park stipulated to dismiss their claims against each other.

The circuit court further ordered the Dubucs to pay Ajax's attorney fees and costs. The court supported its decision on several grounds, including its finding that the Dubucs' challenge to Ajax's lien was frivolous and that the CLA required reimbursement for such fees.

The Dubucs now appeal the circuit court's award of summary disposition in Ajax's favor, specifically by challenging the validity of Ajax's construction lien. They also appeal the court's award of attorney fees and costs to Ajax.

---

[1] Another property owner within the business park also secured Copeland's services. That contract is not at issue in this case.

[2] The Dubucs filed suit in district court. The action was later transferred to the circuit court because the actual amount in controversy exceeded the district court's jurisdictional limits.

## II. VALIDITY OF THE CONSTRUCTION LIEN

The circuit court entered summary disposition in Ajax's favor pursuant to MCR 2.116(C)(8) and (C)(10). We review de novo a circuit court's summary disposition resolution. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013).

> A motion under MCR 2.116(C)(8) "tests the legal sufficiency of the complaint on the basis of the pleadings alone to determine if the opposing party has stated a claim for which relief can be granted." *Begin v Mich Bell Tel Co*, 284 Mich App 581, 591; 773 NW2d 271 (2009). We must accept all well-pleaded allegations as true and construe them in the light most favorable to the nonmoving party. *Id.* The motion should be granted only if no factual development could possibly justify recovery. *Id.* [*Zaher*, 300 Mich App at 139.]

"A motion under MCR 2.116(C)(10) 'tests the factual support of a plaintiff's claim.' " *Id.* at 139, quoting *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). Summary disposition is warranted under this rule "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). This Court must consider "the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183.

The meat of this case revolves around the CLA, which is "intended to protect the interests of contractors, workers, and suppliers through construction liens, while protecting owners from excessive costs." *Vugterveen Sys, Inc v Olde Millpond Corp*, 454 Mich 119, 121; 560 NW2d 43 (1997). The foundation of these protections is "an exchange of information between the owner of the property, the general contractor, subcontractors, material suppliers, and laborers." *Id.* The documents that must be posted, recorded, or exchanged "provide the information necessary to allow the parties to protect their interests." *Id.*

Here, Ajax protected its interests by serving a notice of furnishing to the Dubucs when it supplied asphalt to be incorporated into the Dubucs' property. Ajax also recorded a lien against the Dubucs' property to secure its right to payment for that asphalt. The Dubucs challenge the validity of Ajax's lien on several grounds. First, they contend that the lien was invalid at its inception pursuant to MCL 570.1107(6) of the CLA. MCL 570.1107 governs the rights of parties to file liens against an owner's property. It provides, in relevant part:

> (1) Each contractor, subcontractor, supplier, or laborer who provides an improvement to real property has a construction lien upon the interest of the owner or lessee who contracted for the improvement to the real property, as described in the notice of commencement given under [MCL 570.108 or MCL 570.108a], the interest of an owner who has subordinated his or her interest to the mortgage for the improvement of the real property, and the interest of an owner who has required the improvement. A construction lien acquired pursuant to this

act shall not exceed the amount of the lien claimant's contract less payments made on the contract.

\* \* \*

(6) If the real property of an owner or lessee is subject to multiple construction liens, the sum of the construction liens shall not exceed the amount the owner or lessee agreed to pay the person with whom he or she contracted for the improvement as modified by all additions, deletions, and other amendments, less payments made by or on behalf of the owner or lessee, pursuant to either a contractor's sworn statement or a waiver of lien, in accordance with this act.

As the combined total of Copeland's $24,504 lien and Ajax's $32,574 lien exceeded the contract price, the Dubucs contend that the liens violated subsection (6), rendering them invalid.

However, to properly interpret a statute, one must read it in its entirety. *Harvlie v Jack Post Corp*, 280 Mich App 439, 445; 760 NW2d 277 (2008). MCL 570.1107(1) specifically allows a contractor and material supplier to record concurrent liens on a property as long as each lien amount is within the contract price less payments made. Read together, MCL 570.1107(1) and (6) allow each contractor or supplier to file a lien for the amount owed to it, but limit recovery under the liens from the property owner to "the price stated in the general contract." *Vugterveen Sys*, 454 Mich at 124. Therefore, in the normal course, the property owner would raise MCL 570.1107(6) as a defense to limit its liability. *Id.* If the property owner "can show that the sum of payments made pursuant to sworn statements and waivers of lien" equals or exceeds the general contract price, it can successfully challenge its legal duty to satisfy the liens. *Id.* at 129. There is simply no precedent for holding a lien void ab initio where the sum total of the liens at the time they are independently filed by various contractors and suppliers is greater than the price stated in the general contract.

Moreover, the Dubucs failed to avail themselves of protections provided by the CLA, thereby leaving themselves open to increased liability. The Dubucs consistently argued that the overall general contract price should have been reduced by the down payment it made to Copeland. Ajax's lien, standing alone, would then exceed the remaining general contract price and the Dubucs could not be ordered to pay the whole amount. For this to be true, Copeland would have had to have submitted "a sworn statement[] itemizing its bills" at the time payment was made as required by MCL 570.1107(6). See *Vugterveen Sys*, 454 Mich at 123. See also *Schuster Constr Servs, Inc v Painia Dev Corp*, 251 Mich App 227, 234-235; 651 NW2d 749 (2002). Copeland did not provide this statement, but the Dubucs also failed to exercise their right to demand a sworn statement. See *Vugterveen Sys*, 454 Mich at 123; MCL 570.1110(1)(b). As a result of their own lack of action and noncompliance with the CLA, the Dubucs could not establish that the contract price had been reduced, limiting Ajax's right to recovery.

The Dubucs argue that Copeland's filing of its lien, which stated the contract price and the amount that the Dubucs had already paid, was "the equivalent of a waiver" on Copeland's part and should have been used to reduce the amount due on the general contract. However, as noted in *Schuster*, 251 Mich App at 237 n 7, a waiver from Copeland would not have affected Ajax's right to file a lien for the total amount of asphalt it provided. Rather, the CLA

"unambiguously establishes that the waiver of lien must come from 'the lien claimant' "—Ajax. *Id*. Moreover, Copeland's recorded lien is not a functional equivalent of the sworn statement required under the act to reduce the contract price. Pursuant to MCL 570.1109(6), a particular lienholder's lien amount is reduced by payments made to that lienholder in connection with a sworn statement or waiver of lien by that lienholder. Accordingly, Copeland's voluntary act of conceding the existence of the down payment when recording its lien, long after the time the payment was actually made and a sworn statement should have issued, has no legal effect on *Ajax's* right to file a lien for the amount owed to it. Ajax made no voluntary concession.

The Dubucs challenge the circuit court's acceptance of the inclusion of a time-price differential in the lien amount. The time-price differential was part of the contract price between Ajax and Copeland. The Dubucs equate this with a late fee and blame Copeland for deciding not to pay at delivery and incur this charge. However, MCL 570.1107(7) specifically permits a supplier to include a time-price differential in calculating its lien amount so long as that item is part of the supply contract. *Mich Pipe & Valve-Lansing, Inc v Hebeler Enterprises, Inc*, 292 Mich App 479, 488; 808 NW2d 323 (2011). Moreover, a time-price differential is not a late fee. It is a two-tiered pricing system based on whether the customer pays with cash or credit. *Id.* This claim is therefore without merit.

The Dubucs contend that "Ajax had no right or expectation of payment when it filed its lien" against the Dubucs' property because its contract with Copeland indicated that it "would not get paid *until* Copeland was paid." (Emphasis in original.) Moreover, Ajax filed a cross-claim against Copeland, admitting that Copeland was the party who owed it money, not the Dubucs. The Dubucs ignore the obvious point that whenever a contractor secures material from a supplier, there will be some sort of contract or agreement for the contractor to pay the supplier for the materials. Despite that such contractor-supplier understandings inevitably exist, the Legislature enacted MCL 570.1107(1), which permits suppliers a lien based on the property owner's possession of the supplier's materials. The statute does not include the limitations urged by the Dubucs. Rather, the lien may be filed regardless of whether the contractor promised to pay the supplier at the time of delivery, when the owner pays the contractor, or at some other time. Accordingly, the Dubucs' claim is also without merit.

In a related argument, the Dubucs assert that Ajax should have been precluded from relief because "[s]ubstantial evidence exists to show that there existed an improper alliance between Copeland and Ajax to harm the Dubucs." Specifically, the Dubucs denounce the pay-when-paid supply contract as a "secret[] side-deal," which Ajax and Copeland failed to disclose prior to litigation. Whether the contract was disclosed is irrelevant, however, because the CLA permits suppliers without a direct relationship to the property owner to take a lien for the material supplied. The Dubucs were aware that Ajax supplied the subject asphalt because Ajax served a notice of furnishing on them. The particulars of the Copeland-Ajax contract, other than the supply prices, do not dictate Ajax's lien rights against the Dubucs.

The Dubucs also argue that Ajax improperly pursued its lien claim against them when it could have obtained a judgment against Copeland on its breach of contract cross-claim. Yet, it is well established that "[t]here is no inconsistency between an . . . attempt to enforce a . . . lien and an action at law to recover for the labor performed and materials furnished." *Netting Co v Touscany*, 247 Mich 279, 282; 225 NW 556 (1929) (citations omitted). Rather, "[a] common-

law action to recover a personal judgment and an equitable proceeding to enforce a . . . lien are concurrent remedies, and either may be brought while the other is pending." *Id*. Ajax chose to pursue the Dubucs more stridently and the court held the Dubucs liable to satisfy Ajax's lien. As a result, Ajax's claim against Copeland fell away, as did Copeland's claim against the Dubucs. By satisfying Ajax's lien against the Dubucs, the court efficiently resolved the lien claims in this matter.

The Dubucs argue that MCL 570.1118(2) required the circuit court to resolve their claims against Copeland, and Copeland's counter claims, i.e., every claim against the property, before or in conjunction with foreclosing on Ajax's construction lien. MCL 570.1118(2) provides, in pertinent part:

> In an action to enforce a construction lien through foreclosure, the court *shall examine each claim and defense that is presented* and determine the amount, if any, due to each lien claimant or to any mortgagee or holder of an encumbrance and their respective priorities. . . . [Emphasis added.]

The Dubucs fail to appreciate that this provision does not require the court to simultaneously or concurrently examine and resolve each claim and defense. To hold otherwise, we would be required to read words into the statute, an action we are forbidden to take. *PIC Maintenance, Inc v Dep't of Treasury*, 293 Mich App 403, 410-411; 809 NW2d 669 (2011).

Moreover, MCL 570.1121 specifically contemplates a procedure in which one or more claims may be adjudicated before all claims are resolved, i.e. a piecemeal resolution of the liens presented. MCL 570.1121 states, in pertinent part:

> (1) If the court finds that a lien claimant is entitled to a construction lien upon the real property to which he or she furnished an improvement, and the amount adjudged to be due has not been paid, the court may enter a judgment ordering the sale of any interest in the real property, or a part of the real property, to which the construction lien attaches. If the construction lien attaches only to the improvement furnished, the court may order a sale of the improvement. *If the court finds that there is an interest in or encumbrance against the real property which is superior to the construction lien being foreclosed, the order for sale shall indicate that fact. . . .*

> \* \* \*

> (4) The court shall enter a final order directing the distribution of all of the funds obtained from the foreclosure sale *in accordance with the priorities of the parties as determined by the court*. The court shall adjudicate the rights, if any, of lien claimants to a deficiency judgment against any owner or lessee contracting for an improvement. . . .

> \* \* \*

> (5) *If all claims of lien are not ascertained when a sale is ordered*, or if for any other reason it is deemed proper to postpone the order of distribution of the

proceeds of a sale on foreclosure, *the court may direct the party making the sale to bring the proceeds of the sale into court, to be disposed of according to order of the court*. [Emphasis added.]

Given this provision, we discern no error in the circuit court's decision to resolve the challenge to Ajax's lien before the other claims. Ultimately, Copeland's lien and underlying claim for damages was subsumed by Ajax's. Copeland required payment on its contract with the Dubucs so it could pay its supplier. Once the supplier was paid, Copeland dismissed its claim.

The Dubucs contend that the sum total of its legal arguments, along with certain evidence, suggests a conspiracy between Copeland and Ajax to foist Copeland's duty to pay for the asphalt and to cover Ajax's attorney fees onto the Dubucs. The facts underlying the Dubucs' theory are that (1) Ajax could have swiftly secured summary disposition against Copeland but chose more protracted litigation to take payment from the Dubucs; (2) Ajax avoided asking Copeland's agent during his deposition about Copeland's failure to pay for the asphalt from the Dubucs' down payment; (3) Ajax could have secured attorney fees from the Dubucs to ensure such reimbursement under their contract; and (4) Copeland was a valued Ajax customer. However, the Dubucs did not raise a civil conspiracy claim against Ajax and Copeland in the circuit court, stating only a generalized fraud claim based on the amount of asphalt used in the project. Even when the Dubucs unsuccessfully sought to amend their complaint, they did not propose to add such a claim. As the Dubucs failed to timely raise this issue, the circuit court never analyzed whether such a conspiracy invalidated Ajax's lien. Given the lack of record support for this claim and the deficiency of the Dubucs' multitudinous legal challenges, we decline to consider this issue further.

### III. ATTORNEY FEES

The Dubucs also argue that the circuit court improperly awarded Ajax attorney fees and costs. We review for an abuse of discretion a trial court's decision to award attorney fees. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id.* As a general rule, litigants must cover their own attorney fees, unless a statute, court rule, contract, or common-law exception specifically permits a shifting of this burden. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 388 (2013). We review de novo the application and interpretation of statutes and court rules. *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 532; 866 NW2d 817 (2014); *Detroit Pub Sch v Conn*, 308 Mich App 234, 246; 863 NW2d 373 (2014).

The circuit court first awarded attorney fees and costs under MCL 570.1118(2) of the CLA:

The court may allow reasonable attorneys' fees to a lien claimant who is the prevailing party. The court also may allow reasonable attorneys' fees to a prevailing defendant if the court determines the lien claimant's action to enforce a construction lien under this section was vexatious.

The CLA thereby treats lien claimants and property owners differently. A prevailing lienholder may be awarded reasonable attorney fees in the court's discretion, while a property owner may only recover attorney fees if the lienholder's claim is vexatious. *Vugterveen Sys*, 454 Mich at 135.

Ajax was certainly a prevailing party and we will not rehash the Dubucs' many challenges in this regard. The Dubucs also contend that the court awarded unreasonable attorney fees in violation of the statute. The Dubucs accuse Ajax of unnecessarily inflating its attorney fees by pursuing its lien claim against them instead of quickly securing summary disposition against Copeland based on Copeland's failure to pay the supply contract price. As discussed at length in the previous section, Ajax was not legally required to pursue its contractual remedy over its lien remedy. In addition, as demonstrated by the lower court record, the Dubucs caused Ajax to incur the lion's share of its attorney fees by delaying the litigation and continuously raising arguments that lacked bases in law and fact.

For example, Ajax's counsel sent a letter to the Dubucs' counsel early in the proceedings, explaining why the Dubucs' claims against Ajax lacked merit and requesting that the Dubucs' withdraw their complaint. The Dubucs refused to do so. Ajax's counsel then asked the Dubucs to at least stipulate to dismiss the contract claim, as the Dubucs had not entered a contract with Ajax. The Dubucs again refused, despite that they repeatedly admitted on the record that they entered no such contract. The Dubucs failed to answer interrogatories, requiring motions to compel. After Ajax filed its summary disposition motion, the Dubucs fired their attorney and Mr. Dubuc, also an attorney, took up the case. As a result, Ajax's motion remained unanswered for several months. Mr. Dubuc then took actions seemingly to start the case anew. He even accused Ajax of malicious prosecution for pursuing its lien remedy instead of its contractual remedy against Copeland, and sought to have Ajax reimburse the Dubucs' attorney fees. Ajax was required to respond to these allegations to protect itself. Mr. Dubuc filed an amended complaint with the court, but no motion to amend, requiring further action on Ajax's part. When the circuit court denied the Dubucs' request, they filed a motion for reconsideration, which also required response. To get the ball rolling again, Ajax ultimately had to file a supplemental brief in support of its summary disposition motion. Even after the circuit court granted Ajax's motion and summarily dismissed the Dubucs' claims against it, the Dubucs refused to accept the resolution. At what was supposed to be an evidentiary hearing to determine the amount of Ajax's attorney fee award, the Dubucs injected new challenges to the substantive ruling against it. They filed an application for leave to appeal in this Court despite that the lower court had yet to issue its final order. The Dubucs then battled Ajax's motion to abstain from case evaluation pending between Copeland and the Dubucs, despite that Ajax had no remaining interest in the conflict. Moreover, throughout these proceedings, the Dubucs presented significant amounts of irrelevant evidence which Ajax had to wade through and filed numerous meritless motions, even after their cause was lost.

The Dubucs note that Ajax's attorney fees awarded under the CLA dwarfed its claimed damages, evidencing that the amount granted was not reasonable. As the Dubucs' own actions led to this steep bill, they have no grounds to complain.

Nor were Ajax's fees unreasonable as to the hours or rates charged. *Souden v Souden*, 303 Mich App 406, 414-417; 844 NW2d 151 (2013). The circuit court complied with its duty to

"conduct an evidentiary hearing to determine what services were actually rendered and the reasonableness of those services." *Id*. The court presided over the proceedings from beginning to end, and was continually apprised of Ajax's mounting attorney fees. Because the circuit court properly examined the fee request, reviewed and accepted expert testimony regarding the fees, and made findings based on the evidence presented, it properly granted Ajax its fees and costs under the CLA.

The Dubucs also contend that the circuit court erred in awarding Ajax attorney fees because Ajax improperly refused to participate in case evaluation. On August 22, 2014, *after* the court granted summary disposition in Ajax's favor, Ajax notified the circuit court that it did not intend to participate in case evaluation because the only remaining claims were between the Dubucs and Copeland. Mr. Dubuc, as counsel for plaintiffs, did not object. In fact, Mr. Dubuc acknowledged that the only remaining claim was his claim for breach of contract against Copeland. At that time, Mr. Dubuc specifically asked the court to allow case evaluation to go forward. The court did so, with only the Dubucs and Copeland participating. The current complaint is therefore yet another in a string of claims, motions, and arguments that is completely devoid of merit.

The Dubucs assert that the court's attorney fee award is unsupported by the record because Ajax provided improper "block billing" evidence. "The term 'block billing' refers to 'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.' " *Robinson v City of Edmond*, 160 F3d 1275, 1284 n 9 (CA 10, 1998), quoting *Harolds Stores, Inc v Dillard Dep't Stores, Inc*, 82 F3d 1533, 1554 n 15 (CA 10, 1996). Our review of the several billing statements presented by Ajax in support of the fees requested belies the Dubucs' challenge. The records describe the legal services provided in great detail and specifically indicate the amount of time spent on each task. Given the complete lack of any possible merit in this claim, we can only imagine that the Dubucs were throwing darts in the hopes that one would stick.

The circuit court also determined that the Dubucs' claims against Ajax were frivolous and merited recovery of attorney fees under MCR 2.114, MCR 2.625, and MCL 600.2591. The awarded amount—$63,119.53—was imposed jointly and severally against the Dubucs and their former attorney. The award was not in addition to the award of costs and fees under the CLA and Ajax's total recovery was limited to $91,350.30. As this award is subsumed by the CLA award, the Dubucs raise no complaint about sharing the burden with their former counsel, and that attorney has not challenged his liability, we need not review this claim.

We affirm. Ajax, as the prevailing party, may tax its costs pursuant to MCR 7.219.

/s/ Elizabeth L. Gleicher
/s/ William B. Murphy
/s/ Donald S. Owens