*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KINCAID HENRY BUILDING GROUP, INC.,

        Plaintiff/Counterdefendant/Third-
        Party Defendant-Appellee,

UNPUBLISHED
December 3, 2020

v

HEART OF HOWELL, LLC,

        Defendant/Counterplaintiff/Cross-
        Defendant/Third-Party Plaintiff-
        Appellee,

No. 346034
Livingston Circuit Court
LC No. 14-028116-CK

and

STEPHEN DAVID, INC.,

        Defendant/Counterplaintiff/Cross-
        Plaintiff-Appellant,

and

COMERICA BANK, PLATTE RIVER
INSURANCE COMPANY, and REKON
CORPORATION,

        Defendants-Appellees,

and

THYSSENKRUPP ELEVATOR COMPANY,

        Defendant,

and

EBELS CONSTRUCTION, LLC,

Third-Party Defendant,

and

DE LAU FIRE & SAFETY, INC.,

Third-Party Defendant/Third-Party
Plaintiff-Appellee,

and

MODERN DRYWALL, INC.,

Third-Party Defendant/Cross-
Plaintiff/Third-Party Plaintiff-
Appellee,

and

AB LOCK AND SAFE, INC., doing business as
FISHER DOOR & HARDWARE,

Third-Party Defendant.

Before:  REDFORD, P.J., and RIORDAN and TUKEL, JJ.

PER CURIAM.

Cross-plaintiff Stephen David, Inc. (SDI) appeals as of right the trial court's judgment in favor of SDI on its construction lien claim against Heart of Howell, LLC (HOH) and postjudgment order awarding SDI attorney fees of $4,224 under the Construction Lien Act (CLA), MCL 570.1101 *et seq*. For the reasons set forth in this opinion, we affirm in part, but vacate the trial court's judgment and award of attorney fees and remand for further proceedings.

## I.  BACKGROUND

This case arises from a dispute between HOH and SDI regarding an unpaid balance for SDI's work on the Heart of Howell project ("HOH building project") which involved renovation of three historical buildings purchased by HOH in downtown Howell known as the "Swan's, Thistledown, and Spags buildings." SDI contracted with Kincaid Henry Building Group, Inc. (Kincaid), the general contractor on the HOH building project, to perform paint removal and masonry work. In September 2013, Kincaid terminated SDI from the project because of alleged poor workmanship, SDI's failure to timely complete work, and insubordination. Replacement contractors finished the work that SDI did not complete. On October 7, 2013, SDI recorded a claim of lien against the HOH building project, stating that it last provided labor and materials on

September 17, 2013, and that its lien claim amounted to $80,969 by taking the contract amount of $177,411 and deducting $96,442 for payments it received from Kincaid. Kincaid filed suit against HOH, SDI, and numerous other parties, and SDI cross-claimed against HOH for foreclosure of its construction lien. Following the dismissal of all claims involving other parties, the trial court held a nine-day bench trial on SDI's cross-claim against HOH.

The trial court found that SDI had been terminated for no fault of its own and was entitled to a claim of lien valued at $57,707.14. The trial court ruled that SDI may recover its reasonable attorney fees under the CLA, but limited the amount to 24% of the attorney fees that were incurred solely during trial and later awarded SDI $4,224 in attorney fees.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision regarding a question of law, but the trial court's factual findings at a bench trial are reviewed for clear error. *In re Receivership of 11910 South Francis Rd*, 492 Mich 208, 218; 821 NW2d 503 (2012). A finding is clearly erroneous, if, after a review of the entire record, this Court is left with a definite and firm conviction that the trial court made a mistake. *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003) (citations omitted). To the extent that this issue requires interpretation and application of the CLA, we review issues of statutory interpretation de novo. *Id*. at 507.

## III. ANALYSIS

## A. WAIVER

HOH claims that SDI waived any claim of error respecting the trial court's calculation of the amount of its lien or that SDI should be judicially estopped from challenging the trial court's decision on this issue. We disagree that waiver is applicable to the case at bar.

A waiver occurs when a party intentionally relinquishes a known right. *Sweebe v Sweebe*, 474 Mich 151, 156-157; 712 NW2d 708 (2006). "It is also well-settled that a waiver may be shown by express declarations or by declarations that manifest the parties' intent and purpose." *Id*. at 157 (citation omitted). To constitute a waiver, there must be a showing of "an affirmative expression of assent" and an intention to plainly relinquish a right. *VHS Huron Valley Sinai Hosp v Sentinel Ins Co*, 322 Mich App 707, 716; 916 NW2d 218 (2018). Judicial estoppel is an equitable doctrine which prevents a party from prevailing on one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase. *Spohn v Van Dyke Public Sch*, 296 Mich App 470, 479; 822 NW2d 239 (2012). The doctrine is used to preserve the court's integrity by preventing a party by abusing the judicial process through cynical gamesmanship. *Id*. at 479-480. For the judicial estoppel doctrine to apply, there must be some showing that the court in the earlier proceedings accepted an inconsistent position advanced by the litigant as true. *Id*. at 480.

In support of its waiver or estoppel argument, HOH relies on the fact that SDI moved for an order permitting it to order less than the full transcript of the lower court proceedings for purposes of appeal. At the hearing on SDI's motion, counsel for SDI stated that "the only issue that we intended to pursue on appeal was the issue of attorney fees under the [CLA]." The trial court granted the motion permitting SDI to order less than the full transcript of the lower court

proceedings. However, SDI apparently decided otherwise and it ordered a complete transcript of the proceedings in this case.

Although SDI stated an intention to only pursue the issue of attorney fees on appeal, its statements in its motion and at the motion hearing do not otherwise reflect that SDI plainly intended to relinquish all right to pursue additional appellate relief respecting other claimed errors by the trial court. *VHS Huron Valley Sinai Hosp*, 322 Mich App at 716. Accordingly, we are not persuaded that SDI *waived* the instant claim of error. Further, although SDI did not inform the trial court of an intention to challenge the court's determination of the amount of SDI's construction lien, SDI's decision to raise the issue on appeal is not necessarily an *inconsistent* position, but rather simply reflects that SDI later decided to ultimately pursue this additional claim of error. The earlier statements were associated with SDI's request to order less than a full transcript of the proceedings, but SDI later ordered a complete transcript and the complete transcript has been filed with this Court. SDI is not judicially estopped from challenging the trial court's determination of the amount of its construction lien on appeal.[1]

## B. THE CONSTRUCTION LIEN ACT

### 1. GENERAL PRINCIPLES FOR CALCULATING LIENS

In *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552-553; 886 NW2d 113 (2016) (quotation marks, alterations, and citations omitted), our Supreme Court explained:

> The CLA is intended to protect the interests of contractors, workers, and suppliers through construction liens, while protecting owners from excessive costs. The fundamental purpose of the CLA with respect to contractors, workers, and suppliers is to provide a method to secure payment for their labor and materials. The Legislature has declared that the CLA is a remedial statute that shall be liberally construed to secure the beneficial results, intents, and purposes of the act. Accordingly, when interpreting the CLA, we should always be mindful of the CLA's intended purpose.

* * *

> The first inquiry in determining whether a party may seek attorney fees under the CLA is whether the party is a lien claimant. Under [MCL 570.1]118(2), the trial court has discretion to award attorney fees to a lien claimant who is the prevailing party. The CLA defines a lien claimant as a person having a right to a construction lien under the act.

---

[1] We similarly reject HOH's suggestion that SDI's earlier-filed motion to file less than a full transcript thereby waived this Court's jurisdiction.

The CLA specifies the extent to which a lien claimant may claim a right to a construction lien in MCL 570.1107 which provides in relevant part:

> (1) Each contractor, subcontractor, supplier, or laborer who provides an improvement to real property has a construction lien upon the interest of the owner or lessee who contracted for the improvement to the real property, as described in the notice of commencement given under section 108 or 108a, the interest of an owner who has subordinated his or her interest to the mortgage for the improvement of the real property, and the interest of an owner who has required the improvement. A construction lien acquired pursuant to this act shall not exceed the amount of the lien claimant's contract less payments made on the contract.[2]

> \* \* \*

> (6) If the real property of an owner or lessee is subject to multiple construction liens, the sum of the construction liens shall not exceed the amount the owner or lessee agreed to pay the person with whom he or she contracted for the improvement as modified by all additions, deletions, and other amendments, less payments made by or on behalf of the owner or lessee, pursuant to either a contractor's sworn statement or a waiver of lien, in accordance with this act.

MCL 570.1120 provides:

> If a lien claimant, by reason of the failure of an owner or lessee to perform the contract, and without fault on the part of the lien claimant, has been prevented from completely performing the contract, the lien claimant shall be entitled to compensation for as much as was performed by the claimant under the contract, in proportion to the price stipulated for complete performance of the whole contract, less any payments made to the lien claimant and also to any additional damages which the lien claimant may be entitled to as a matter of law.

The plain language of these statutory provisions provides that the amount of a lien claimant's construction lien must be calculated by determining the total value of the claimant's contract, the amount of work performed by the claimant under the contract, i.e., the proportion or percentage completed, and the amount paid by the owner in relation to the work performed. The value of the total contract multiplied by the proportion of the contract completed equals the amount owed by the owner, minus the amount paid by the owner, equals the value of the lien. MCL 570.1107(1) and MCL 570.1120. Under MCL 570.1107(6), however, where an owner is subject to multiple construction liens, the sum of the construction liens shall not exceed the amount the owner agreed to pay under its contract as modified by change orders that added, deleted, or

---

[2] See also *Erb Lumber, Inc v Gidley*, 234 Mich App 387, 396; 594 NW2d 81 (1999) ("The proper amount of a lien is the lien claimant's contract price less payments *made on that contract* to the lien claimant.") (Emphasis added.)

-5-

amended the contract, less payments made by the owner pursuant to contractor sworn statements or lien waivers.

## 2. OWNER'S DEFENSE UNDER MCL 570.1107(6)

SDI first argues that the trial court erred in determining the amount of SDI's construction lien claim against HOH. We agree that the trial court erred in its application of the law and that remand for further consideration of SDI's construction lien claim is necessary. Although the parties frame the issue as whether the trial court correctly determined the amount of SDI's construction lien, that issue hinges on whether HOH may invoke the defense set forth in MCL 570.1107(6).

In *Vugterveen Sys, Inc v Olde Millpond Corp*, 454 Mich 119; 560 NW2d 43 (1997), the lodestar case of Michigan jurisprudence addressing the application of MCL 570.1107(6), our Supreme Court addressed whether a property owner could use payments made to a second general contractor as a defense to a construction lien foreclosure asserted by a subcontractor. The Court acknowledged that the system under the CLA could be used by "unscrupulous contractors to force property owners to pay excessive construction charges." *Id*. at 124. Therefore, the Legislature included in the CLA "a defense to liens that would force owners to pay more than the price stated in the general contract." *Id*. In *Vugterveen*, the general contractor, Vander Wall Construction, contracted with the plaintiff subcontractor to perform work on two units in a condominium building for a total amount of $9,750. The defendant owner of the property later fired both the general contractor and Vugterveen which prompted Vugterveen to record a construction lien and notice of furnishing against the property. *Id*. at 126. The owner of the property, Olde Millpond, paid $276,969 to complete construction, $10,374 more than it had agreed to pay Vander Wall to complete the construction work under their contract. *Id*.

Our Supreme Court evaluated Olde Millpond's claim that MCL 570.1107(6) provided a defense to Vugterveen's construction lien because it paid more than the original contract price to complete the project. *Id*. at 127. The Court noted that in enacting MCL 570.1107(6), the Legislature intended to protect owners of real property "from excessive liens by allowing an owner to rely on the price set forth in its contract with the general contractor." *Id*. at 128. The Court rejected Olde Millpond's assertion that MCL 570.1107(6) directly applied to the case and that it could not be required to satisfy an outstanding construction lien because it had already paid an amount in excess of the original contract price. First, our Supreme Court concluded that the terms in MCL 570.1107(6), "person with whom [the owner] contracted," did not contemplate situations in which more than one general contractor served on the job, or factual scenarios in which a general contractor and its subcontractors were fired and subsequently replaced. *Id*. at 128. The Court explained:

> Further, Olde Millpond's analysis allows an owner to cut off liens held by subcontractors by merely firing them and hiring successor contractors. Under this reading, an owner would be able to assert [MCL 570.1107(6)] as a defense to all liens held by subcontractors on the first general contract whenever the owner pays the successor contractors amounts which, when added to the payments already made on the first general contract, exceed the price of the first general contract.

This is clearly contrary to the act's stated purpose of protecting the rights of such parties. Thus, this reading must be rejected. [*Id*.]

Because MCL 570.1107(6) must be interpreted in a manner "so as to give full effect to the act's purpose of protecting the interests of builders as well as owners[,]" our Supreme Court clarified that the phrase "payments made" in MCL 570.1107(6) referred only to "payments made on the specific contract between the owner and the person with whom the owner contracted." *Id*. at 129. The Court clarified:

Thus, Olde Millpond may use all payments made on the contract with Vander Wall as a defense to Vugterveen's lien because Vugterveen was a subcontractor on the contract between Olde Millpond and Vander Wall. Olde Millpond may not use payments made on the second general contract as a defense to Vugterveen's lien because these payments were not made on the relevant contract. [*Id*.]

Our Supreme Court held that Olde Millpond could only raise MCL 570.1107(6) as a defense if it could establish that what it paid under the contract with Vander Wall, together with the claim of lien asserted by Vugterveen, exceeded the cost of the Vander Wall contract. *Id*. Because the trial court had not factually determined how much Olde Millpond paid under the Vander Wall contract "as attested by sworn statements or waivers of lien," the Court remanded the case to the trial court to allow it to undertake that inquiry. *Id*. Our Supreme Court directed that "Vugterveen has a valid lien to the extent that the lien and the payments made by Olde Millpond on the Vander Wall contract do not exceed the price of the contract between Olde Millpond and Vander Wall." *Id*. at 130, 134.

SDI essentially argues that the trial court erred as a matter of law by deducting from the amount of its construction lien the costs that HOH paid to other subcontractors to complete the work on the project that was not finished by SDI. SDI relies upon MCL 570.1107(1), which provides that "[a] construction lien acquired pursuant to this act *shall not exceed the amount of the lien claimant's contract less payments made on the contract*." (Emphasis added.) MCL 570.1103(4) defines "contract" as "a contract, of whatever nature, for the providing of improvements to real property, including any and all additions to, deletions from, and amendments to the contract."

Neither MCL 570.1107(1) nor MCL 570.1120 authorize HOH to deduct from SDI's lien the payments HOH made to additional subcontractors who completed work on the project after SDI's termination by Kincaid. MCL 570.1107(6) also does not authorize such a deduction. Notably, HOH points to no provision in the CLA that allows HOH to deduct what the parties and the trial court characterized as the "cost of cover." Indeed, in *Vugterveen*, 454 Mich at 128, our Supreme Court expressly disavowed an interpretation of MCL 570.1107(6) that would allow "an owner to cut off liens held by subcontractors by merely firing them and hiring successor contractors." Specifically, the Court rejected an interpretation of the CLA that would allow an owner to rely on MCL 570.1107(6) as a defense to a lien claim that it had paid amounts to additional subcontractors that, when added to the payments made on the first general contract, exceed the price set forth in the first general contract.

HOH urged the trial court to consider the total contract price minus the amount paid minus its cost to cover as the method for calculating SDI's lien amount. Under that formula, HOH urged the trial court to deduct from SDI's contract the amounts that it paid to replacement contractors to finish the work that SDI started. HOH has advanced the argument that its costs to cover paid to replacement subcontractors to complete the work left undone by SDI, a subcontractor, should be deducted from SDI's construction lien under MCL 570.1107(1). The record reflects that the trial court agreed with and applied HOH's formula to reduce SDI's lien claim by amounts paid to the subcontractors which were hired after SDI's termination from the project. The CLA, however, does not permit doing so.

On appeal, HOH attempts to distinguish this case from *Vugterveen* on the ground that the replacement subcontractors, Helms and Zimmerman Masonry, Inc., were both hired and paid by Kincaid. This assertion, however, is not supported by a close reading of the case. Specifically, in *Vugterveen*, 454 Mich at 128, our Supreme Court disagreed with the interpretation of MCL 570.1107(6) advanced by the owner, Olde Millpond, which argued that it should not have to pay any outstanding liens because it had already paid more than the original contract price to complete the building project. Our Supreme Court rejected this interpretation because MCL 570.1107(6) did not expressly address factual scenarios in which a general contractor and its subcontractors were fired and replaced.

The principles articulated in *Vugterveen* apply to this case. Although HOH does not seek to completely cut off SDI's construction lien, it asserts the defense set forth in MCL 570.1107(6) to *reduce* the amount of SDI's lien. In *Vugterveen*, 454 Mich at 129, our Supreme Court explained that MCL 570.1107(6) must be interpreted in a manner that protects owners like HOH from paying lien claims in excess of the contract terms, and that the defense of MCL 570.1107(6) may be invoked, but that the phrase "payments made" "refers to payments made on the specific contract between the owner and the person with whom the owner contracted." In that case, the Court held that payments made by Olde Millpond on the general contract with Vander Wall could be used as a defense to Vugterveen's lien, because Vugterveen constituted a subcontractor under the contract that existed between Vander Wall and Olde Millpond. *Id.* at 129. Accordingly, under the statute, HOH could assert as a defense to SDI's lien claim the payments that it made on the contract with Kincaid, "the person with whom [HOH] contracted," but such amounts would only be a defense to the extent that "the sum of the construction liens . . . exceed[ed] the amount" that HOH agreed to pay Kincaid under their contract. MCL 570.1107(6). In *Vugterveen*, 454 Mich at 129, our Supreme Court expressly recognized the limitation of the MCL 570.1107(6) defense:

> Olde Millpond will have a defense to Vugterveen's lien if it can show that the sum of payments made pursuant to sworn statements and waivers of lien under the Vander Wall contract plus Vugterveen's claim of lien exceed the price of the Vander Wall contract.

Therefore, under the CLA, contrary to HOH's argument in the present case, an owner of real property may not simply rely on MCL 570.1107(6) to assert that it was required to pay additional "costs of cover" to complete a building project, and then attempt to reduce the construction lien of a subcontractor which, for whatever reason, did not finish its work. Instead, to establish entitlement to reduce SDI's claimed lien, HOH was required to demonstrate that the

-8-

payments it made under the sworn statements and lien waivers under the Kincaid contract, *plus* SDI's claim of lien, exceeded the price of its contract *with Kincaid*. *Vugterveen*, 454 Mich at 129.

SDI argues that the trial court erred by relying on *Steelcon, Inc v Bennett & Wright Group, Inc*, 257 F Supp 2d 895 (ED Mich, 2003), to calculate the amount of SDI's lien. In *Steelcon*, which involved consolidated cases, the plaintiff subcontractor, subcontracted to perform modifications to the owner's slag grinding and handling plant in Detroit. *Id*. at 896-897. After not being fully paid, the plaintiff sued to foreclose on its construction lien against the owner's property. *Id*. at 897. The cases were removed to federal court, and in the context of the plaintiff's motion for summary judgment against the owner and general contractor, the federal district court, reading MCL 570.1107(6) and MCL 570.1110(7) together, held that, if a subcontractor properly files a notice of furnishing under the CLA, an owner may not invoke the defense of MCL 570.1107(6) by relying on the sworn statements or lien waivers of a general contractor. *Steelcon*, 257 F Supp 2d at 899. The court further concluded that MCL 570.1107(6) did not limit the plaintiff's lien because it had filed a notice of furnishing, and therefore, the owner could not rely on the general contractor's sworn statements or lien waivers, and thus the owner had not made payments pursuant to the sworn statements or lien waivers of a general contractor as required to invoke the defense set forth in MCL 570.1107(6). *Steelcon*, 257 F Supp 2d at 900. In our view, the *Steelcon* decision does not support SDI's contention that it contained a specific calculation formula for determining the amount of SDI's construction lien in this case.

In *Vugterveen*, 454 Mich at 129, our Supreme Court instructed that an owner raising the defense set forth in MCL 570.1107(6) must demonstrate "that the sum of payments made pursuant to sworn statements and waivers of lien under the [general contractor's] contract plus [the subcontractor's] claim of lien exceed the price of the . . . contract [between the owner and the general contractor]." Throughout the proceedings in the trial court, HOH presented evidence establishing what HOH paid on its contract with Kincaid through the testimony of Courtney Tarara. For example, on cross-examination by SDI's counsel, Tarara estimated the initial contract amount between HOH and Kincaid at approximately $1.7 million. In their posttrial briefs, SDI and HOH both agreed that the specific amount of the contract between Kincaid and HOH amounted to $1,716,787.25. Regarding payments, Tarara stated that before Kincaid left the project and submitted its last sworn statement, HOH had paid Kincaid $1,263,500.67. Tarara also recounted that in order to discharge the lien Kincaid had recorded against HOH's property, HOH made later additional payments of $95,000 and $310,714.24 on the contract, with the payment of $310,714.24 paid to Kincaid's subcontractors. On direct examination, Tarara also testified regarding discrete payments made to Kincaid's subcontractors.

The trial court, however, did not make any factual findings concerning (1) the total amount of the contract between Kincaid and HOH, (2) whether the sum of payments HOH made in conformance with sworn statements and lien waivers under the contract between Kincaid and HOH, plus SDI's claim of lien, exceeded the price set forth in the contract between Kincaid and HOH. Instead, perhaps because of the trial court's erroneous legal conclusion that HOH could simply defend SDI's claim of lien by arguing that HOH had to pay additional subcontractors to finish the building project, and its misunderstanding concerning what proofs HOH was required to establish to support a defense under MCL 570.1107(6), the trial court simply did not address and determine these pivotal factual issues. Moreover, although the trial court cited MCL 570.1107(6) in its written opinion, it did not apply the statute to the facts of this case.

HOH claims that SDI "invited error"[3] because it conceded in the trial court that what was paid to additional subcontractors to complete the work that SDI did not perform could be deducted from SDI's lien. We disagree. The record reflects that the parties and the trial court misapprehended the defense set forth in MCL 570.1107(6), and this misunderstanding resulted in the deduction of the costs paid to cover SDI's work to new subcontractors from the amount of SDI's construction lien, rather than determining whether HOH's payments on the contract with Kincaid, combined with the payments made to SDI, exceeded the price of the contract between HOH and Kincaid. *Vugterveen*, 454 Mich at 129, 134.

We conclude that this case must be remanded to the trial court for it to render the necessary findings of fact and to then make a legal determination regarding whether HOH established a defense under MCL 570.1107(6) to SDI's claim of lien. The trial court must apply MCL 570.1107(6) as directed by *Vugterveen* to determine whether the sum of the construction liens exceed the amount HOH agreed to pay Kincaid for the improvements as modified by all additions, deletions, and other amendments to the Kincaid contract, less payments made by or on behalf of HOH pursuant to either a contractor's sworn statement or a waiver of lien, in accordance with the CLA.

SDI disputed below whether the payments that HOH made to subcontractors in the amount of $310,714.24 were in fact made to subcontractors who had contracted with Kincaid, and SDI maintains on appeal that payments to the replacement subcontractors were unrelated to the contract between Kincaid and HOH. This Court is an error-correcting Court, and its "review is generally limited to matters actually decided by the lower court." *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 210; 920 NW2d 148 (2018). On remand, the trial court must render factual findings concerning (1) the total amount of the contract between HOH and Kincaid, (2) the amount of payments HOH made under that contract, (3) whether the sum of the payments HOH made were in conformance with the sworn statements and lien waivers under that contract between HOH and Kincaid, and (4) whether the sum of the liens claimed in relation to HOH and Kincaid's contract, including SDI's claim of lien, exceeded the contract between Kincaid and HOH.

SDI further argues that under MCL 570.1107(6) and *Vugterveen*, the trial court should not have admitted and considered evidence of payments made to replacement subcontractors to complete the work left undone by SDI because the replacement subcontractors were paid under a second contract between HOH and Rekon, the replacement general contractor, and no evidence was presented that these subcontractors were paid by Kincaid under its contract with HOH. The record, however, does not support this assertion. Specifically, both Tarara and Dan Zimmerman of Zimmerman Masonry, Inc., testified that the replacement contractors that completed SDI's work were paid under the contract with Kincaid. Tarara further stated that Trust Thermal was hired to complete the exterior paint removal that SDI did not complete, and HOH paid Kincaid approximately $33,000 for the work that Trust Thermal performed. Helms was hired to complete

---

[3] As this Court stated in *Cassidy v Cassidy*, 318 Mich App 463, 476; 899 NW2d 65 (2017), " '[i]nvited error' " is typically said to occur when a party's own affirmative conduct directly causes the error."

the sealing of the brick work and HOH paid $7,203 for that work. HOH similarly paid Kincaid payments of $34,111.58 and $24,970.05 for Zimmerman's masonry work on the HOH building project. Zimmerman also testified that after signing a subcontract with Kincaid in September 2013, Kincaid fully paid for its services and had submitted a full unconditional lien waiver for the project.

SDI also argues that evidence of payments made to replacement contractors should not have been admitted and considered by the trial court as "cost to cover" because the work completed by the subcontractors went far beyond the scope of work that SDI contracted to complete. The trial court indicated in its opinion that it made one adjustment for the expansion of the work beyond the scope of the SDI contract respecting work Zimmerman Masonry, Inc. performed. SDI, however, describes, based upon the record, several instances in which the later subcontractors performed work additional to and different from the work SDI contracted to perform. SDI submits that it contracted to complete chemical paint removal on the HOH building project, but HOH contracted with Trust Thermal to perform soda-blasting of the brick to remove paint which caused additional damage that HOH paid to repair. SDI contends that the cost of the amount for the repairs occasioned by Trust Thermal's work at HOH's request should not have been deducted from SDI's lien. SDI also submits that HOH's principal, Joseph Parker, chose a new type of brick for the HOH building project after SDI had already installed the brick HOH chose for the project which substantially changed the project from what SDI had contracted to perform. Thus, SDI argues that any attempt by HOH to deduct the cost that Zimmerman Masonry charged for installing the new brick from SDI's lien is inappropriate. During trial, Rich Stouffer, SDI's principal, further testified that the work that Zimmerman Masonry completed went beyond SDI's scope of work, and Dan Zimmerman acknowledged in his testimony that the scope of work for Zimmerman Masonry, Inc. "mushroomed" over the life of the project.

In its opinion, the trial court treated the "Total Repair/Cost to Cover" as a category of costs that it deducted from the total subcontract price for SDI's services minus the amounts reflected by lien waivers for painting and masonry work performed by SDI. The trial court reduced SDI's lien claim by the amount of the "Total Repair/Cost to Cover" but the record is not entirely clear regarding what work may have been performed to repair defective work by SDI and what work constituted completion of the work SDI contracted to perform but because Kincaid terminated SDI it did not. These are not distinctions without a difference. Repair of defective work by SDI could properly be considered by the trial court to determine what proportion of SDI's contract SDI completed. Deduction of HOH's cost of cover to complete SDI unfinished work, however, is not authorized by the CLA for calculation of the amount of SDI's lien claim.

MCL 570.1107(1) and MCL 570.1120, when read in conjunction, do not prescribe the deduction of the cost to cover the completion of the work that SDI could not perform because of its termination. Under these statutory provisions, an owner is required only to pay for the amount of work performed by the subcontractor and if it hires another contractor to complete the project it must pay that contractor for the work it performs and cannot reduce the unpaid lien claimant's construction lien by the amount it paid the newly hired contractor. This is because the subcontractor lien claimant is only entitled to be paid for the proportion of the work it actually performed. The proper amount of a lien is the lien claimant's contract price in relation to the proportion of the work performed, less payments made on that contract to the lien claimant. MCL 570.1107(1); *Erb Lumber Co v Homeowner Constr Lien Recovery Fund*, 206 Mich App 716, 720;

522 NW2d 917 (1994). Therefore, the scope of the construction lien at issue depends on what the lien claimant performed and does not encompass the entire project as later completed by others. MCL 570.1120. Under MCL 570.1107(1), the amount of the lien is limited to the amount owed for the work performed under the applicable contract. *C D Barnes Assoc, Inc v Star Heaven, LLC*, 300 Mich App 389, 427-428; 834 NW2d 878 (2013). Noticeably absent from the trial court's opinion, however, is any indication of a determination of the proportion of SDI's contract that SDI completed.

MCL 570.1107(6) specifies that the sum of the construction liens on real property "shall not exceed the amount the owner [] agreed to pay the person with whom he [] contracted for the improvement as modified by all additions, deletions, and other amendments, less payments made by or on behalf of the owner," as evidenced by sworn statements or lien waivers. Admission of cost of cover evidence respecting the completion of the work for which SDI contracted for the project should not have been used by the trial court to determine the amount of SDI's lien for the work it performed and for which it had not been paid. Further, the additional costs made necessary merely because the owner changed the project's scope beyond the scope of the subcontractor's contract cannot be factored into the calculation of the subcontractor's lien unless the lien claimant actually agreed to perform the added work and it became part of the subcontractor's total contract price. Reduction of the construction lien amount by the cost of cover or because of an owner's later expansion or change of the scope of the work does not comport with MCL 570.1107(1) and MCL 570.1120, nor is it authorized under MCL 570.1107(6).

Later in its opinion the trial court stated that the value of SDI's completed work should not be reduced by the value of the work performed by replacement contractors because SDI had been fired through no fault of its own and the evidence did not convince the trial court that SDI provided defective performance respecting the work it performed, nor that Zimmerman Masonry, Inc. merely continued and finished work within the same scope of SDI's contract. Despite these significant factual findings, the trial court indicated that it concluded that SDI's lien claim could be reduced by the cost of cover incurred by HOH. In so doing, the trial court erred to the extent that it calculated the amount of SDI's construction lien by subtracting the cost of cover and the cost of any work beyond the scope of SDI's contract with Kincaid in relation to Kincaid's contract with HOH after termination of SDI.

## C. ADVERSE INFERENCE REGARDING JOSEPH PARKER

SDI next argues that the trial court erred by not inferring that because HOH failed to call its principal, Joseph Parker, as a witness, his testimony would have been adverse to HOH. We disagree.

We review de novo the legal question whether the trial court should have drawn an adverse inference against HOH for its failure to call Parker as a witness. *Kuhlgert v Mich State Univ*, 328 Mich App 357, 371; 937 NW2d 716 (2019). As a preliminary matter, HOH contends that SDI waived this issue because during a motion hearing that preceded trial, counsel for SDI confirmed that SDI was satisfied with its witness list, which did not list Parker as a witness. We find no merit to HOH's contention. At most, SDI waived its own right to call Parker as a witness, but that is not determinative of whether SDI waived any right to request that an adverse inference be drawn from HOH's decision to not call Parker as a witness. Regardless, the trial court correctly decided that

-12-

HOH's decision not to call Parker as a witness did not entitle SDI to a presumption that Parker's testimony would have been adverse to HOH.

In *Ward v Consol Rail Corp*, 472 Mich 77, 84; 693 NW2d 366 (2005), our Supreme Court explained the underpinnings of an evidentiary presumption. The Court described a presumption as a "procedural device" that will entitle the party relying on it at trial to a directed verdict if the opposing party does not proffer evidence to rebut the presumption. *Id*. If the opposing party *does* present rebuttal evidence, the presumption will disappear, but an underlying inference will remain, to be weighed by the fact-finder against the rebuttal evidence. *Id*. The Court stated, "It is well settled that missing evidence gives rise to an adverse presumption only when the complaining party can establish intentional conduct indicating fraud and a desire to destroy [evidence] and thereby suppress the truth." *Id*. at 85 (quotation marks and citations omitted). The fact-finder may only draw an adverse inference from a party's failure to produce evidence "when: (1) the evidence was under the party's control and could have been produced; (2) the party lacks a reasonable excuse for its failure to produce the evidence; and (3) the evidence is material, not merely cumulative, and not equally available to the other party." *Id*. at 86 (citations omitted); see also *Pugno v Blue Harvest Farms, LLC*, 326 Mich App 1, 24; 930 NW2d 393 (2018) (setting forth the same requirements that must be met before the fact-finder can draw an adverse inference against a party who does not present evidence).

In this case, the trial court did not err by declining to draw an adverse presumption or inference as a result of HOH's decision to not call Parker as a trial witness. First, the procedural device of an adverse presumption would not have been appropriate because SDI did not demonstrate that HOH acted intentionally or fraudulently to suppress the truth at trial. Although HOH did not offer a reason for not calling Parker, HOH could decide which witnesses to call in its defense. Even assuming that Parker's testimony would have been material, as the trial court correctly stated in its ruling, SDI could have named Parker as a witness and subpoenaed him to testify at trial, but it did not do so. The record does not reflect that SDI sought to call Parker as a witness and HOH refused to make him available. SDI has failed to establish its entitlement to an adverse presumption or inference and the trial court did not err in this regard.

SDI also asserts in a reply brief that the trial court abused its discretion by not admitting into evidence a transcript of Parker's deposition testimony and by not allowing SDI's counsel to question Tarara regarding admissions made by Parker. These issues are not properly before this Court. "Reply briefs must be confined to rebuttal of the arguments in the appellee's . . . brief[.]" MCR 7.212(G). It is well settled that a party is not permitted to raise a new issue in a reply brief. *Blazer Foods, Inc v Restaurant Props, Inc*, 259 Mich App 241, 252; 673 NW2d 805 (2003). See also *Vanalstine v Land O'Lakes Purina Feeds, LLC*, 326 Mich App 641, 650; 929 NW2d 789 (2018) (this Court may decline to address an issue not raised in an appellant's statement of questions presented on appeal). Although SDI requests in its reply brief that leave to amend be granted to the extent that its brief on appeal does not sufficiently challenge the admissibility of Parker's deposition testimony, we deny this request, particularly because HOH has not had an opportunity to respond to these evidentiary claims.

## D. ATTORNEY FEES

SDI also argues that the trial court erred in determining the attorney fees to which it was entitled under the CLA by awarding SDI only $4,224, a small percentage of the trial cost only, without holding an evidentiary hearing. We find that the trial court erred by failing to set forth its analysis under the rubric defined in *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008), *Pirgu v United Servs Auto Ass'n*, 499 Mich 269; 884 NW2d 257 (2016), and *Wood v Detroit Auto-Inter Ins Exch*, 413 Mich 573; 321 NW2d 653 (1982).

Where attorney fees are authorized, a trial court's determination regarding the amount of a fee award is reviewed for an abuse of discretion. *Pirgu*, 499 Mich at 274. A court abuses its discretion when it erroneously applies the law or its determination of a fee award falls outside the range of reasonable and principled outcomes. *Id*.

As a preliminary matter, we reject HOH's claim that counsel for SDI "forfeited" this issue by waiving, on the record, "any further hearing on attorney fees." The statement on which HOH relies was made in the limited context of a discussion regarding the hourly rate the trial court intended to use to calculate the limited attorney fees that the court had already decided would be awarded to SDI. The trial court agreed to use the hourly rate requested by SDI, and HOH has not challenged that decision. Viewed in context, SDI's counsel did not agree that an evidentiary hearing was not necessary to decide the broader issue of a reasonable attorney fee award. On the contrary, in its motion and at the motion hearing, SDI's counsel repeatedly requested that the trial court hold an evidentiary hearing respecting attorney fees. Accordingly, HOH's claim that SDI waived this issue lacks merit.

The CLA provides that attorney fees may be awarded to a construction lien claimant that prevails on its claim. MCL 570.1118(2) provides:

> In an action to enforce a construction lien through foreclosure, the court shall examine each claim and defense that is presented and determine the amount, if any, due to each lien claimant or to any mortgagee or holder of an encumbrance and their respective priorities. The court may allow reasonable attorneys' fees to a lien claimant who is the prevailing party. The court also may allow reasonable attorneys' fees to a prevailing defendant if the court determines the lien claimant's action to enforce a construction lien under this section was vexatious.

In *Pirgu*, 499 Mich at 271, our Supreme Court reaffirmed the legal framework for determining reasonable attorney fees set forth in *Smith*, 481 Mich 519. The Court explained:

> [A] trial court must begin its reasonableness analysis "by determining the fee customarily charged in the locality for similar legal services" and then multiplying that number "by the reasonable number of hours expended in the case." After a trial court has calculated this baseline figure, it must consider and briefly discuss on the record the remaining *Wood* factors and the factors in MRPC 1.5(a) to determine whether any up or down adjustments from the base number are appropriate. [*Pirgu*, 499 Mich at 276, quoting *Smith*, 481 Mich at 530-531 (opinion by TAYLOR, C.J.).]

-14-

Because *Wood* and *Smith* contained two different lists of factors to be considered, some of which were duplicative, to assist trial courts in their analysis, the Court in *Pirgu* refined the factors for consideration as follows:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,
>
> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,
>
> (3) the amount in question and the results obtained,
>
> (4) the expenses incurred,
>
> (5) the nature and length of the professional relationship with the client,
>
> (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,
>
> (7) the time limitations imposed by the client or by the circumstances, and
>
> (8) whether the fee is fixed or contingent. [*Pirgu*, 499 Mich at 282.]

This list of factors is not exclusive. *Id*. To allow for meaningful appellate review, the trial court "should briefly discuss its view of each of the factors above on the record and justify the relevance and use of any additional factors." *Id*. (citation omitted). If the opposing party challenges the request for attorney fees, "[t]he trial court should normally hold an evidentiary hearing." *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 113; 593 NW2d 595 (1999). However, if the parties establish a sufficient record and the trial court fully explains its reasoning, an evidentiary hearing may not be required. *Id*.

In this case, in setting the attorney fee award, the trial court, consistent with *Pirgu*, 499 Mich at 276, first considered a reasonable hourly rate for SDI's counsel by consulting the 2017 Economics of Law and Practice Attorney Income and Billing Rate Summary Report, and HOH does not challenge the trial court's conclusion that an hourly rate of $400 was reasonable. The trial court, however, ruled that SDI could recover attorney fees for only 10.56 hours expended by its attorneys. SDI substantially prevailed on the amount it sought under the claim of lien which made it a prevailing party under the CLA. *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 306 Mich App 203, 211-214; 854 NW2d 744 (2014).

Moreover, noticeably absent from the trial court's ruling was the determination of a baseline figure of the attorney fees expended in the case by SDI and consideration of the factors from *Wood* and MRPC 1.5(a) to determine whether an up or down adjustment to such baseline figure was warranted. *Pirgu*, 499 Mich at 276. In *Powers v Brown*, 328 Mich App 617, 623-624; 939 NW2d 733 (2019), this Court clearly indicated that when the trial court fails to follow the *Smith/Pirgu* method and does not apply the relevant factors, it errs. Like the trial courts in *Pirgu* and *Powers*, the trial court here focused on *one* of the factors in the *Smith/Pirgu* framework—the amount sought by SDI and the result obtained in comparison to that amount—without addressing

-15-

the remaining factors or articulating its rationale for the amount awarded. The trial court's failure to address the other factors constituted an abuse of discretion. Therefore, it is necessary to vacate the trial court's attorney fee award and remand for further proceedings. *Powers*, 328 Mich App at 624.

The trial court's conclusion that SDI had entitlement only to attorney fees incurred for 10.56 hours expended during trial rests solely on its consideration of the third factor set forth in the *Smith*/*Pirgu* framework, the amount sought by SDI and the results obtained. However, in *Smith*, 481 Mich at 532 (opinion by TAYLOR, C.J.), our Supreme Court explained:

> In considering the time and labor involved (factor 1 under MRPC 1.5 [a] and factor 2 under *Wood*) the court must determine the reasonable number of hours expended by each attorney. The fee applicant must submit detailed billing records, which the court must examine and opposing parties may contest for reasonableness. The fee applicant bears the burden of supporting its claimed hours with evidentiary support. If a factual dispute exists over the reasonableness of the hours billed or hourly rate claimed by the fee applicant, the party opposing the fee request is entitled to an evidentiary hearing to challenge the applicant's evidence and to present any countervailing evidence.

After the trial court awarded 24% of the attorney fees incurred solely during trial, SDI submitted detailed billings demonstrating the work performed by its attorneys and the hours spent supported by an affidavit from its lead attorney regarding details of the attorneys who assisted in the case. The trial court multiplied 10.56 hours, the time that the trial court determined that SDI spent at trial on the issues on which it prevailed, by the rate it deemed reasonable. The trial court, however, should have considered all of the applicable factors and made findings regarding them on the record.

On remand, the trial court must first consider and determine the extent to which HOH may rely, if at all, on the defense claimed under MCL 570.1107(6) to SDI's construction lien claim. The trial court must analyze the record and determine the total value of SDI's contract, the value of work actually performed by SDI in proportion with the total it contracted to perform, and then subtract the amount paid to SDI for the work to derive the value of its construction lien. If, after such analysis SDI is determined to have prevailed on its construction lien claim, the trial court must analyze and decide SDI's attorney fee award under the factors set forth in *Smith/Pirgu/Woods* and *Powers* while being mindful of the remedial nature of the CLA. To the extent that the trial court's consideration of these matters depends on resolution of disputed factual issues, the trial court may hold an evidentiary hearing to resolve the disputed issues and then, in the exercise of its discretion, determine the amount to which SDI may be entitled.

CONCLUSION AND INSTRUCTIONS ON REMAND

Although we affirm the trial court's decision not to draw an adverse inference from HOH's decision not to call Joseph Parker as a witness, we vacate the trial court's judgment and remand to the trial court for further proceedings consistent with this opinion including that the trial court shall render the necessary findings to enable it to make a legal determination whether HOH established the defense set forth in MCL 570.1107(6) to SDI's lien claim. We also vacate the trial court's

award of attorney fees, and upon its determination of the validity and extent of SDI's lien claim, the trial court should consider the applicable factors set forth in *Smith/Pirgu/Woods* and *Powers* and make appropriate findings on the record in its exercise of discretion in determining whether and to what extent SDI may be entitled to recover attorney fees that it incurred to enforce its construction lien claim.

Therefore, we direct the trial court to undertake the following upon remand:

A.      Related to SDI's lien claim, the trial court shall determine the following:

1.      The amount of SDI's subcontracts for paint and masonry work (as modified by all additions, deletions, and other amendments);

2.      The percentage SDI completed in its performance of its subcontracts;

3.      The amount paid to SDI under its subcontracts (pursuant to either a contractor's sworn statement or a waiver of lien, in accordance with the CLA);

4.      After determination of 1, 2, and 3, the trial court shall calculate the amount of SDI's construction lien by multiplying the percentage of SDI's performance by the total amount of SDI's subcontracts, from which it shall then subtract the amount paid to SDI.[4] If this calculation results in a positive value, the amount equals SDI's enforceable lien claim, i.e., the amount owed to SDI;[5] and

5.      Whether and to what extent HOH may assert the defense set forth in MCL 570.1107(6), according to its plain language as explained in this opinion and as directed in *Vugterveen*, by determining (a) whether HOH is subject to multiple construction liens related to HOH's contract with Kincaid, (b) the sum of those construction liens, (c) whether those construction liens exceed the amount HOH agreed to pay Kincaid for the improvements as modified by all additions, deletions, and other amendments, (d) the amount of payments made by HOH under the Kincaid contract pursuant to either a contractor's sworn statement or lien waiver in accordance with the CLA, and (5) the contract amount minus what HOH paid to Kincaid or its subcontractors.

B.      Related to SDI's attorney fees claim, if upon the completion of the CLA analysis set forth above, the trial court concludes that SDI is the prevailing party, the trial court shall undertake the analysis of SDI's attorney fees under the rubric of *Smith*, *Purgu*, and *Wood*. In undertaking this

---

[4] The trial court shall not deduct the "cost of cover," the cost of completion of the work SDI contracted to perform.

[5] If the calculation results in a negative value, the result would indicate an overpayment owed to HOH.

analysis, the trial court shall consider, evaluate, and articulate its reasoning respecting factors (1)-(8) of *Pirgu* and any other factors the trial court deems appropriate.

C.	On remand, if the trial court is satisfied that the factual record is adequate for its analysis and sufficient for it to rule, the trial court is not required to conduct an evidentiary hearing or allow any party to supplement the record with either evidence or offers of proof. If, however, the trial court deems it helpful or necessary, it may allow additional proofs on any specific issue or sub-issue. *Head*, 234 Mich App at 113.

D.	The trial court may provide the parties the opportunity to submit briefs and may impose page limits on any written submissions as it deems appropriate. The trial court may entertain oral argument but is not required to do so.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Jonathan Tukel